UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R4 GL ACQUISITION, LLC, a Delaware limited liability company,<br><br>Plaintiff and Counterclaim Defendants,<br><br>v.<br><br>GLORIETA, LLC, *et al*.,<br><br>Defendants, Counterclaim Plaintiffs and Third Party Plaintiffs,<br><br>and<br><br>GLOBE-OP DEVELOPMENT, LLC, *et al.*,<br><br>Defendants,<br><br>v.<br><br>Chris Sullivan, Marc Schnitzer and Glorieta Partners Ltd.,<br><br>Third Party Defendants. | CASE NO: 1:25-CV-00944 |

**COUNTER-PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS**

**GULKO SCHWED LLP**
Samuel Kadosh
525 Chestnut Street, Suite 209
Cedarhurst, New York 11516
212-634-7927
skadosh@gulkoschwed.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................. 2

   I.    THE PARTIES, THE PARTNERSHIP AGREEMENT, AND ITS RELEVANT TERMS. 2

   II.   PROBLEMS ARISE AT THE PROPERTY AND THE PARTIES MODIFY THE
AGREEMENT TO SOLVE THEM. .................................................................... 3

   III.  COUNTER-DEFENDANTS IGNORE THEIR PROMISES BUT REAP THE
BENEFITS OF GLORIETA'S PROMISES. ........................................................ 5

LEGAL STANDARD............................................................................................... 6

ARGUMENT ........................................................................................................... 7

   I.    THE AGREEMENT IS VALID AND ENFORCEABLE AS MODIFIED ....... 7

      A.   R4 Provided Written Consent to the Modification. ....................................... 7

      B.   The Modification Satisfies the *Cahill* Test. .................................................. 9

      C.   The Statute of Frauds Has Been Satisfied..................................................... 13

   II.   R4 BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
DEALING (COUNT IV). .................................................................................. 15

   III.  COUNT I STATES A STRAIGHTFORWARD CLAIM FOR BREACH OF THE
PARTNERSHIP AGREEMENT. ...................................................................... 15

   IV.  GLORIETA HAS ALLEGED FRAUD WITH SUFFICIENT PARTICULARITY
(COUNT V). ..................................................................................................... 17

   V.   THE COUNTERCLAIM PROPERLY ALLEGES THAT R4 BREACHED ITS
FIDUCIARY DUTIES TO GLORIETA (COUNT VI)........................................ 20

   VI.  THE COUNTERCLAIM PROPERLY ALLEGES THAT SCHNITZER AND
SULLIVAN AIDED AND ABETTED R4'S BREACH OF ITS FIDUCIARY DUTIES
(COUNT VII).................................................................................................... 23

   VII.   THE EQUITABLE ACCOUNTING (COUNT IX) AND UNJUST ENRICHMENT
(COUNT X) CLAIMS ARE PLED IN THE ALTERNATIVE................................. 24

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir 1999) .............................................................. 7

*Anwar v. Fairfield Greenwich, Ltd*., 728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010) ................ 24, 30

*Barrett v. Loc. 804 Union of the Int'l Bhd. of Teamsters*,

   Case No. 24-1139, 2025 U.S. App. LEXIS 30092, *2 (2d Cir Nov. 18, 2025) ........................ 7

*Brewfab, LLC v. 3 Delta, Inc*., No. 22-11003,

   2022 U.S. App. LEXIS 28429, at *8 (11th Cir. Oct. 13, 2022) .................................. 9

*Brickell Bay Club Condominium Ass'n v. Hernstadt*, 512 So. 2d 994, 997 (Fla Dist Ct App 1987)

   ............................................................................................................ 19

*Cahill. See Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 1

   45 So. 3d 989, 993-95 (Fla. DCA 2014) .................................................. 10

*Canada v. Allstate Ins. Co*., 411 F.2d 517, 519-20 (5th Cir. 1969) ................................ 10

*Casale v Carrigan & Boland, Inc.,* 288 So. 2d 299, 301 (Fla Dist Ct App 1974) ................ 18, 19

*Celano v. Dlabal*, 591 So. 2d 653, 654-655 (Fla. 1st DCA 1991) ................................ 15

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ................................ 7

*Colon v. SE Indep. Delivery Servs*.,

   2017 U.S. Dist. LEXIS 223508, *4 (M.D. Fla. Aug. 24, 2017) ................................ 14

*ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1273 (S.D. Fla. 2020) .............. 11

*Cyganowski v. Beechwood Re Ltd. (In re Platinum-Beechwood Litig.)*,

   427 F. Supp. 3d 395, 441 (S.D.N.Y. 2019) ................................................ 28

*Dania Live 1748 II, LLC v. Saito Dania, LLC*,

   23-60960-Civ-Scola, 2024 U.S. Dist. LEXIS 212944, at *23 (S.D. Fla. Nov. 22, 2024) ....... 11

*DeJohn v. Speech, Language & Communication Assoc., SLP, OT, PT, PLLC*,

    111 A.D.3d 1313, 1313-1314 (4th Dept 2013) ........................................................ 14

*DiFolco v. MSNBC Cable L.L.C.*, 622 F3d 104, 111 (2d Cir 2010) ............................................. 7

*Erenler v. TJM Props., Inc.*,

    8:21-cv-671-SDM-SPF, 2022 U.S. Dist. LEXIS 239450, at *12 (M.D. Fla. Dec. 21, 2022).. 11

*Fidelity & Deposit Co. of Maryland v. Tom Murphy Construction Co.*,

    674 F.2d 880 (11th Cir. 1982) ............................................................................. 11

*Hoover v. HSBC Mortg. Corp.* (USA), 9 F. Supp. 3d 223, 235-236 (N.D.N.Y. 2014) ................. 7

*HTC Leleu Fam. Tr. v. Piper Aircraft, Inc.*, 571 F. App'x 772, 775 (11th Cir. 2014) .................. 8

*Ins. Co.v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956) ..................................................................... 8

*Interland, Inc. v. Bunting*, 2005 U.S. Dist. LEXIS 36112, *11 (ND Ga Mar. 31, 2005) ............. 25

*Kova Commer. of Naples, LLC v. Sabin*,

    2024 U.S. Dist. LEXIS 38847, *22-23 (M.D. Fla. Mar. 6, 2024) .......................................... 24

*Liboy v. Russ*, 2023 U.S. Dist. LEXIS 175050, *10 (S.D.N.Y. Sept. 29, 2023) .......................... 6

*McGuire v. Adex Corp.*,

    15-CV-2670-T-27AAS, 2017 WL 1422426, at *3 (M.D. Fla. Apr. 19, 2017) ........................ 8

*McKenzie v. United States Tennis Ass'n Inc.*,

    2024 U.S. Dist. LEXIS 27286, *12 (MD Fla Feb. 16, 2024)................................................. 29

*ML Fashion, LLC v. Nobelle GW, LLC*,

    2022 U.S. Dist. LEXIS 18634, *22-23 (D Conn Feb. 2, 2022) .............................................. 22

*Mowder v. Smith*, 390 So. 3d 106, 109 (Fla Dist Ct App 2024) ................................................ 15

*Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022) ...................... 7

*Partnerships United, LLC v. Heard Glob. Events, LLC*,

No. 23-CV-61415-WPD, 2024 WL 2782090, at *4 (S.D. Fla. Apr. 9, 2024) ........................ 15

*Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. Dist. Ct. App. 2017) ............................................ 24

*Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 374-375 (S.D.N.Y. 2024) ...................... 21

*Robinson v. MSG Ent. Grp., LLC*, 2025 U.S. Dist. LEXIS 129583, (S.D.N.Y. July 8, 2025) . 6, 22

*Salameno v. Rawlings*, 2021 U.S. Dist. LEXIS 53454, *51-52 (S.D.N.Y. Mar. 22, 2021) ........ 29

*SEC v. Sugarman*, 2020 U.S. Dist. LEXIS 181034, *15-16 (S.D.N.Y. Sept. 30, 2020) .............. 21

*Sleit v. Ricoh Corp.*,

    8:07-cv-724, 2008 U.S. Dist. LEXIS 118754 (M.D. Fla. Nov. 4, 2008) ................................. 14

*Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla Dist Ct App 2003) . 25

*Telxius Cable América S.A. v. CHT Holdings*, LLC,

    22-cv-22303-KMM, 2023 U.S. Dist. LEXIS 235969, at *6-7 (S.D. Fla. Sep. 22, 2023)........ 11

*TW Cleaning Servs. v. Wawa, Inc.*,

    2018 U.S. Dist. LEXIS 209567, *7 (M.D. Fla. Nov. 27, 2018)................................................. 8

*U.S. Distributors, Inc. v. Block*,

    09-21635-CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009)................................. 14, 15

*United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Resp., Inc.*,

    865 F.3d 71, 81 (2d Cir. 2017)............................................................................................... 21

*Virtus Pharms., LLC v. Woodfield Distrib., LLC*,

    2022 U.S. Dist. LEXIS 128957, *36-37 (M.D.Fla. July 20, 2022) ......................................... 17

Counter-Plaintiffs, NEW VISION GLORIETA, LLC, and GLORIETA, LLC (collectively, "Glorieta" or "General Partners"), respectfully submits this memorandum of law in opposition to the motion to dismiss ("Motion" or "Mot.") (ECF No. 115) Glorieta's Second Amended Counterclaim and Third Party Claims (ECF No. 104) ("Counterclaim") filed by Plaintiff and Counter-Defendant R4 GL Acquisition, LLC ("R4") and Third-Party Defendants Marc Schnitzer and Chris Sullivan (collectively, the "Counter-Defendants").

## PRELIMINARY STATEMENT

Ignoring well-pled facts as well as controlling law, this Motion offers the Court no legitimate basis for dismissing any of the claims asserted in the Counterclaim. First and foremost, in denying the existence of the modified partnership agreement between Glorieta and R4 as well as R4's resulting fiduciary duties, Counter-Defendants ignore detailed allegations, supported by contemporaneous emails, that R4 agreed to assume managerial responsibilities that had previously been the exclusive domain of Glorieta. Likewise, Counter-Defendants overlook clear Florida authority establishing that R4's multiple written communications reflecting its assumption of these responsibilities satisfy the Agreement's requirement for "prior written consent" to any modification, as well as Florida's Statute of Frauds.

The Motion likewise overstates the relevant pleading requirements for Counter-Plaintiffs' claims of fraud and breach of the partnership agreement. The Counterclaim pleads the who, what, when, where, and how of Counter-Defendants' misrepresentations with the particularity required by Rule 9(b), and it further explains precisely how those misrepresentations induced Glorieta's reliance and caused it harm. Glorieta is not required to prove its claims in its pleading, it is sufficient to plausibly allege them, which it is has done.  Counter-Defendants cannot obtain dismissal of these (or any) claims by disregarding Glorieta's well-pled allegations or disputing the truth of those allegations.

1

Finally, Counter-Defendants' arguments for the dismissal of the breach of fiduciary duty claims, as well as the equitable accounting and unjust enrichment claim, ignore Fed. R. Civ. P. 8(d), which permits the pleading of alternative or even inconsistent theories. Counter-Defendants cannot simultaneously deny the validity of the modified agreement and demand dismissal of all claims that do not depend on the agreement's enforceability.

In short, under the proper Rule 12(b)(6) framework, all claims asserted in the Counterclaim are sufficiently pled and the Motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     THE PARTIES, THE PARTNERSHIP AGREEMENT, AND ITS RELEVANT TERMS.

Glorieta and New Vision Glorieta are Florida limited liability companies. Counterclaim, ¶¶ 1-2. R4 is a Delaware limited liability company that is managed and controlled by Counter-Defendants Sullivan and Schnitzer. *Id.* at ¶¶ 2, 56. In 2015, Glorieta and R4 entered into a Partnership Agreement (the "Agreement") to form Glorieta Partners, Ltd. (the "Partnership"). *Id.* ¶ 8. The purpose of the Partnership was to develop and operate a 330-unit, affordable housing apartment building located in Opa-Locka, Florida, commonly referred to as Glorieta Gardens (the "Property" or "Project"). *Id.* at ¶ 9. Under the Agreement, NEW VISION GLORIETA and GLORIETA LLC were the general partners and R4 was the limited partner. *See generally*, Countercl. Under Section 4.1 of the Agreement, R4, as the limited partner, had no management responsibilities for or control over the Project:

> **4.1 Powers of General Partner**. Subject to the terms and provisions of this Agreement and the Project Documents, the General Partner shall have all powers necessary, convenient or appropriate to carry out the purposes, powers and business of the Partnership referred to in Sections 2.1 and 2.2 and , subject only to limitations specifically set forth in this Agreement, shall possess and enjoy all the rights and powers of a partner of a partnership to the extent permitted by applicable law. Subject to the terms and provisions of this Agreement, the General Partner shall have the exclusive management and control of the business of the Partnership.

Agreement, ECF No. 61-1 (emphasis supplied).

Rent at the Property was primarily paid for by the Department of Housing and Urban Development ("HUD") via a project-based Section 8 housing assistance payment contract ("HAP Contract") entered into between the Partnership and HUD. Countercl., ¶ 10. Under the Partnership Agreement, R4 was required to make capital payments, in installments, to Glorieta and Glorieta was tasked with maintaining the Property and making necessary repairs to keep the Property in good working order. *Id.* at ¶ 11. In return for R4's investment, it was to receive certain tax credits and losses, among other benefits, generated from the development of the Property. *Id.* at ¶ 12. The allocation of tax credits under the Partnership Agreement required several IRS Forms 8609 to be issued by Florida Housing Finance Corporation. *Id.* at ¶ 13. The issuance of the Form 8609 required the Property to be developed and maintained in accordance with certain standards and requirements of the Florida Housing Finance Corporation. *Id.* at ¶ 14.

## II.    PROBLEMS ARISE AT THE PROPERTY AND THE PARTIES MODIFY THE AGREEMENT TO SOLVE THEM.

In 2022, several maintenance and repair issues arose at the Property including, but not limited to, sanitary line and water intrusion issues. Countercl., ¶ 15. Consequently, Glorieta and R4 entered into a modification of the Agreement that would shift some of Glorieta's responsibilities for the Project on to R4. *Id.* at ¶ 24. Specifically, R4 and Glorieta agreed that they would jointly fund, manage, and direct repair work at the Property, with some of the work falling solely under the purview of R4. *Id.* at ¶ 16. They also agreed, at that time, that R4 would hire, fund, and direct Stearns Weaver Miller to pursue the Florida Housing Finance Corporation to issue the Form 8609s. *Id.* at ¶ 17.

In furtherance of these modifications to the Agreement, R4 did, in fact, hire, fund, and direct Stearns Weaver Miller to pursue Florida Housing Finance Corporation for the issuance of

the Form 8609s. *Id.* at ¶ 23. Likewise, R4 did, in fact, fund, manage, and direct certain repair work at the Property. *Id.* at ¶ 8. For example, in a May 23, 2022 email, Counter-Defendant Chris Sullivan wrote to Jeff Staley, a representative of New Vision Glorieta, LLC, and others, the following email that:

> I want to be absolutely clear again that R4 needs to be in the loop on all work related to drainage, underground sanitary improvements, moisture prevention, etc. so I can communicate effectively to Fair Housing. This includes who is performing the work, the scope/cost and when. <u>Optimal Construction is not the decision maker. New Vision, Creative Choice and R4 as limited partner are the decision makers.</u> I should be copied on all correspondence. I also want to be clear that R4 will not accept a scope of work that doesn't completely address the physical issues that we are already aware of. I am already confused about the change to the bids/scope/contractors that are in process. Jeff- please deliver this message and arrange for others to be on the call Wednesday.

Counterclaim, ¶ 19 (emphasis supplied). The May 23, 2022 email, signed by Sullivan, is attached as **Exhibit A**.[1]

As another example, in a June 30, 2023 email exchange between Sullivan and an official from the City of Opa-locka, Sullivan wrote "I have personally walked 100% of the units at the Aswan site following the unsatisfactory GLE visit and assisted with developing the scope of work." *Id.* at ¶ 20. A true and correct copy of that email, signed by Sullivan, is attached as **Exhibit B**.

Similarly, on January 25, 2024, Sullivan communicated directly with HUD, stating that he "was on-site yesterday to walk the Property" and that "ownership, in partnership with R4, as Limited Partner . . . are taking very proactive measures to improve conditions on-site." *Id.* at ¶ 21. A true and correct copy of the January 25, 2024 email, signed by Sullivan, is attached as **Exhibit C**. In an email exchange dated January 30, 2024, a plumbing vendor communicated directly with Sullivan concerning repairs to the sanitary drain system at one of the Glorieta buildings. Sullivan

---

[1] All exhibits are attached to the Declaration of Samuel Kadosh dated December 10, 2025.

subsequently informed Jeff Staley, a representative of New Vision Glorieta, LLC, of the agreement regarding the repairs. Countercl., ¶ 22. The May 23, 2022, June 30, 2023, January 25, 2024 and January 30, 2024 email exchanges are collectively referred to as the "Emails."

In sum, through their subsequent agreements and course of dealings, the parties modified the portion of the Agreement dealing with Glorieta and R4's duties and responsibilities as it relates to funding and repair work at the Property. *Id.*, ¶ 24.

### III.    COUNTER-DEFENDANTS IGNORE THEIR PROMISES BUT REAP THE BENEFITS OF GLORIETA'S PROMISES.

In 2024, HUD grew dissatisfied with the level of progress for the repair work at the Property and indicated its intention to stop making payments under the HAP Contract. *Id.* ¶ 25. Rather than continuing to work with Glorieta to address the issues, R4 stopped funding repair work, stopped directing Stearns Weaver Miller with regard to obtaining the Form 8609s, and notified Glorieta that it was removed from the Partnership. *Id.* at ¶ 26. Under the Agreement, had Glorieta not been removed, it would have stood to obtain the lion's share of equity in the Property following the 15-year compliance period contemplated by the Agreement. *Id.* ¶ 27. Despite the fact that the Form 8609s have not been issued by Florida Housing Finance Corporation, R4 has taken the benefit of the tax credits and now also stands to obtain all of the equity in the Property. *Id.* at ¶ 28. To date, R4 has received approximately $23,361,774 in tax credits and $11,575,680 in losses generated by the Project but has not paid the full amount due under the Partnership Agreement, including the Fourth Installment, in the amount of $4,593,928. *Id.* at ¶ 29.

On August 1, 2025, R4 filed its Amended Complaint in this action, which self-servingly blames all of the issues at the Property on Glorieta and others, and seeks compensation from them for those issues. ECF No. 61. On November 5, 2025, Glorieta and the other named defendants filed their Second Amended Answer and Affirmative Defenses to the Amended Complaint, and

Glorieta further filed the Counterclaim against Counter-Defendants, for their breaches of the modified Agreement and related misconduct. ECF No. 104. On November 19, 2025 Counter-Defendants filed their Motion, ECF No. 115, which is chiefly based on their erroneous contention that the Agreement was not modified. *See generally id.* As explained in this Opposition, the Motion is entirely without merit and should therefore be denied.

<div align="center">

**LEGAL STANDARD**

</div>

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *Robinson v. MSG Entm't Grp.*, LLC, 23-cv-9366, 2025 U.S. Dist. LEXIS 129583, *8 (S.D.N.Y. July 8, 2025). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Liboy v. Russ*, 2023 U.S. Dist. LEXIS 175050, *10 (S.D.N.Y. Sept. 29, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barrett v. Loc. 804 Union of the Int'l Bhd. of Teamsters*, Case No. 24-1139, 2025 U.S. App. LEXIS 30092, *2 (2d Cir Nov. 18, 2025).

In ruling on a motion to dismiss, a Court may consider documents that are attached to the complaint or incorporated in it by reference. *Hoover v. HSBC Mortg. Corp.* (USA), 9 F. Supp. 3d 223, 235-236 (N.D.N.Y. 2014). *Id.* Moreover, "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F3d 104, 111 (2d Cir 2010). Importantly, though, because a Rule 12(b)(6) motion

<div align="center">

6

</div>

challenges only the legal feasibility of the complaint, courts adjudicating such motions "take [] no account of the complaint's 'basis in evidence." *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022).

Finally, and relevant here, Rule 8(d) of the Federal Rules of Civil Procedure permits plaintiffs to plead in the alternative. *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir 1999). Even where "allegations were not specifically pleaded as "in the alternative," "Rule 8(d) "offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party, as [the Court] must do in reviewing orders granting motions to dismiss or for summary judgment." *Id*.

## ARGUMENT

## I.    THE AGREEMENT IS VALID AND ENFORCEABLE AS MODIFIED

Counts I-IV of the Counterclaim are based on the parties' subsequent modification of the Agreement. The Motion seeks to dismiss each of these claims by challenging the existence and validity of the modification, specifically arguing that: (1) the Agreement can only be modified with the consent of R4, and R4 never provided written consent; (2) Glorieta fails to meet the test for the oral modification of written agreements, as set forth by the Florida Supreme Court in *Prof. Ins. Co.*v. *Cahill*, 90 So. 2d 916, 918 (Fla. 1956); (3) the modification fails to satisfy the Statute of Frauds. Mot., p. 10-14. As explained below, R4 is wrong on all counts.

### A.  R4 Provided Written Consent to the Modification.

Counter-Defendants' argument that R4 did not provide written consent to the modified Agreement fails because the Emails demonstrate R4's written consent to the modified terms.

Florida law is crystal clear that emails qualify as written consent for purposes of contract modification. *See McGuire v. Adex Corp.*, No. 8:15-CV-2670-T-27AAS, 2017 WL 1422426, at *3 (M.D. Fla. Apr. 19, 2017) ("Plaintiff contends that his Employment Agreement was modified by

7

his email exchange with Intercloud's CEO . . . The Employment Agreement provides that '[t]his Agreement may be amended only by a written instrument duly executed by or on behalf of the parties hereto.; Under Florida law, the emails collectively constituted a written instrument."); *HTC Leleu Fam. Tr. v. Piper Aircraft, Inc*., 571 F. App'x 772, 775 (11th Cir. 2014) ("[T]here is substantial evidence of written modification of the Purchase Agreement. Piper identifies emails between HTC and Placo memorializing HTC's request for the 384 Aircraft."); *Brewfab, LLC v. 3 Delta, Inc*., No. 22-11003, 2022 U.S. App. LEXIS 28429, at *8 (11th Cir. Oct. 13, 2022) (contract formed by text message stating "I george Russo from 3 Delta do promise to pay brew fab in full all outstanding bills as of this date and all agreed upon work done for 3 delta future forward."); *TW Cleaning Servs. v. Wawa, Inc*., 2018 U.S. Dist. LEXIS 209567, *7 (M.D. Fla. Nov. 27, 2018) ("In addition, Plaintiff alleges that subsequent modification was in fact acknowledged in writing. . . Under Florida law, writings may be made in almost any form . . including correspondence between the parties, schedules of stores to clean, insurance agreements, and invoices."). *See also* § 1490 6 Consent of Adverse Party, 6 Wright & Miller Fed. Prac. & Proc. Civ. §1490 (3d ed. 2010) ("Rule 15(a) requires that the consent be written. The rule does not state that the agreement must take a particular form and presumably any writing clearly indicating that consent has been given should suffice. . . . Moreover, consent may be implied.").

Here, R4 provided its written consent to the modifications when it wrote in a May 23, 2022 email that "New Vision, Creative Choice, **and R4,** as limited partner **are the decision makers**." *See* Ex. A (emphasis supplied). In a June 30, 2023 email, R4 represented to an official from the City of Opa-locka and a representative of Glorieta, that "I have personally walked 100% of the units at the Aswan site following the unsatisfactory GLE visit **and assisted with developing the scope of work**." *See* Ex. B (emphasis supplied). In a third email, R4 communicated directly with

HUD and a representative of Glorieta, stating that R4 was "taking very proactive measures to improve conditions on-site." *See* Ex. C. And in a fourth email exchange, R4 actually entered into a repair contract with a third-party vendor for plumbing services at one of the Glorieta buildings. Countercl., ¶ 22. Based on clear Florida law, each of these emails are sufficient to allege, particularly at this early stage, that R4 consented and approved the modifications to the Agreement which contemplated R4 taking on a managerial role in the project.

Counter-Defendants attempt to downplay the significance of these emails by claiming that R4's emails do not reflect a contract amendment, and reflected nothing more than "R4 requiring to be kept informed as contemplated by the Partnership Agreement." Mot. 4-6. The actual emails belie this contention. In the May 23, 2022 email, Sullivan declares that R4 is a "decision maker." In the June 30, 2023 email to the Florida Housing Finance Corporation, Sullivan states that he "assisted with developing scope of work." These statements go far beyond any reporting requirements in the Agreement and instead demonstrate that R4 agreed to a contract modification under which R4 assumed control and management of certain responsibilities for the Project.

### B. The Modification Satisfies the *Cahill* Test.

Even if the Court finds that the emails do not constitute written consent to the modification, , the oral modificiation is still enforceable because the *Cahill* test has been satisfied.

In *Cahill*, the Florida Supreme Court held that where a contract contains a no-oral modification clause, it "may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it." *Cahill*, 90 So. 2d at 918.

The Florida state and federal courts are split regarding the application of *Cahill.* The federal courts have largely adopted an expansive interpretation of *Cahill*, and allow for the oral

modification of a written contract where a party alleges detrimental reliance on the oral modification and conduct which would render it a fraud upon one party for the other to refuse to perform the alleged oral modification. *Canada v. Allstate Ins. Co*., 411 F.2d 517, 519-20 (5th Cir. 1969) ("Florida law, however, goes even further and allows an oral modification of a written contract under circumstances of detrimental reliance even though the contract contains a provision prohibiting its alteration except in writing."); *Dania Live 1748 II, LLC v. Saito Dania, LLC*, Civil Action No. 23-60960, 2024 U.S. Dist. LEXIS 212944, at *23 (S.D. Fla. Nov. 22, 2024) ("Florida law allows written contracts to be modified by oral agreement if "the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it."); *Telxius Cable América S.A. v. CHT Holdings*, LLC, 22-cv-22303-KMM, 2023 U.S. Dist. LEXIS 235969, at *6-7 (S.D. Fla. Sep. 22, 2023) ("Florida law permits enforcement of oral modifications where there is "clear and unequivocal evidence of a mutual agreement." . . . that "has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it.").

Some courts go even further, and interpret *Cahill* to require only a subsequent course of dealing in order to modify the written contract. *Fidelity & Deposit Co. of Maryland v. Tom Murphy Construction Co.*, 674 F.2d 880 (11th Cir. 1982) ("*Cahill* and *Canada* stand for the proposition that oral modifications are effective despite prohibitive language in the contract only where clear and unequivocal evidence of a mutual agreement is present."); *Erenler v. TJM Props., Inc.*, No. 8:21-cv-671-SDM-SPF, 2022 U.S. Dist. LEXIS 239450, at *12 (M.D. Fla. Dec. 21, 2022) ("Under *Linear* . . . the parties to a contract may modify the written agreement by subsequent oral agreement or course of dealing with one another despite the requirement of a writing in order to modify. . ."); *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1273 (S.D. Fla. 2020).

Under the more restrictive view adopted by some state courts, which Counter-Defendants have misleadingly presented as the only standard used under Florida law,– the plaintiff must establish three elements: "(a) that the parties agreed upon and accepted the oral modification (i.e., mutual assent); (b) that both parties (or at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); and (c) that due to plaintiff's performance under the contract as amended the defendant received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., independent consideration)." *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993-95 (Fla. DCA 2014).

The allegations here meet either standard. The standard adopted by the 11th Circuit and subsequent federal courts has been met because the Counterclaim clearly alleges that "the applicable provisions of the Partnership Agreement dealing with the General Partners' duties and responsibilities as it relates to funding and repair work were modified by the parties' subsequent agreement and course of dealings." Countercl. ¶ 24; *see also id.* ¶¶ 15-17 (alleging that R4 agreed to pay for and manage attorneys to procure Form 8609s). The Counterclaim also alleges a course of dealing between the parties – both through action and communication – reflecting the amendment. *See id*, ¶ 18 ("In furtherance of these agreements, the Investor Limited Partner did, in fact, fund, manage, and direct certain repair work at the Property."); *id*. at ¶ 22 (emails where plumbing vendor communicates directly with R4 concerning repairs). *See also* Exhs. A-C. And, a refusal to enforce the oral agreement would work a fraud on Glorieta, as it relied to its detriment on R4's false promises by relinquishing control to R4 and by "continu[ing] investing in the Project" while R4 neglected the promises it made to Glorieta in return. *See* Countercl., Second Affirmative Defense, ¶¶ 42, 48, 57.

11

The Counterclaim's allegations also satisfy the more restrictive test articulated in *Okeechobee*. *First*, as mentioned, Glorieta pleads that the parties agreed upon and accepted the oral modification. *See* Countercl., ¶¶ 15-17 ("In 2022 . . . the General Partners and the Investor Limited Partner agreed that they would jointly fund, manage, and direct repair work at the Property, with some of the work falling solely under the purview of the Investor Limited Partner.") R4's contention that Glorieta's Counterclaim "fail[s] to offer any evidence of the alleged conversation in 2022 during which R4 and [Glorieta] orally agreed to modify the terms of the Partnership Agreement," Mot., p, 12, is of no moment, as courts adjudicating 12(b)(6) motions "take[] no account of the complaint's basis in evidence." *Nunes*, 643 F. Supp. 3d at 411.[2]

*Second*, the Counterclaim alleges that the parties acted "in furtherance of" the oral modification. *See* Countercl., ¶18 ("In furtherance of these agreements, the Investor Limited Partner <u>did, in fact</u>, fund, manage, and direct certain repair work at the Property."); *id.* at ¶ 22 (email showing plumbing vendor communicating directly with R4 concerning repairs); *id.* at ¶ 23 (alleging that R4 retained attorneys to obtain Form 8609s.).

*Third*, R4 received independent consideration through the additional powers it had under the modified Agreement, which it did not have under the original Agreement. Section 4.1 of the Agreement states that the General Partners "<u>shall have the exclusive management and control of the business of the Partnership</u>." (emphasis supplied). The parties modified this portion of the Agreement by vesting R4 with certain management and control over the Project that had once been exclusive to Glorieta. R4's retention of these powers constitutes a new benefit and thus

---

[2] Moreover, there is no requirement at the pleading stage for Glorietta to even allege (must less prove) the details surrounding the offer and acceptance or other surrounding details beyond the allegation that the parties entered into an agreement. *Aurelius Cap. Master, Ltd. v. The Republic of Argentina*, 2025 U.S. Dist. LEXIS 191996, *14 (S.D.N.Y. Sep. 29, 2025) ("To state a claim for breach of contract sufficiently a complainant "need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.").

independent consideration to support the modified Agreement and satisfy the third *Cahill* element.[3] *See* Restatement (Second) of Contracts § 71 ("(1) To constitute consideration, a performance or a return promise must be bargained for. . . . (3) The performance may consist of (a) an act other than a promise, or (b) a forbearance, or (c) *the creation, modification, or destruction of a legal relation*.") (emphasis added).

Accordingly, Glorieta has adequately alleged a binding oral modification of the Agreement. *See, e.g.*, *Colon v. SE Indep. Delivery Servs.*, 2017 U.S. Dist. LEXIS 223508, *4 (M.D. Fla. Aug. 24, 2017) (denying motion to dismiss because *Cahill* factors were sufficiently pled); *Omega Patents, LLC v. Auto. Data Sols., Inc.*, 2021 U.S. Dist. LEXIS 261056, *5 (M.D. Fla. Sept. 13, 2021) (same).

### C. The Statute of Frauds Has Been Satisfied.

Counter-Defendants argue that their consent to the modification fails to satisfy Florida's Statute of Frauds. It is Counter-Defendants' burden to demonstrate this, but they have failed to meet that burden here. *See Sleit v. Ricoh Corp.*, No. 8:07-cv-724-T-23TBM, 2008 U.S. Dist. LEXIS 118754, 2008 WL 4826113, at *4 (M.D. Fla. Nov. 4, 2008) ("The party alleging unenforceability due to the statute of frauds has the burden of establishing this defense."). First, the Statute of Frauds has been satisfied through the aforementioned Emails. Indeed:

> Florida courts takes an expansive view as to what kinds of documents satisfy the writing requirement, and several writings, at least one of which signed by the party who challenges the existence of the terms of the contract, may evidence the terms of the parties' agreement. . . .  Additionally, "Florida law provides that electronic signatures 'may be used to sign a writing and shall have the same force and effect as a written signature.'" *See U.S. Distributors*, 2009 WL 3295099, at *5 (citing Fla. Stat. § 668.004; Fla. Stat. § 668.003(4)).

---

[3] Contrary to Counter-Defendants' contention, Motion, p. 10, R4's agreement to take responsibility for this task is not undermined by the fact that Glorieta was doing its part in "taking all commercially reasonable efforts to obtain the Form 8609s."

*Partnerships United, LLC v. Heard Glob. Events, LLC*, No. 23-CV-61415-WPD, 2024 WL 2782090, at *4 (S.D. Fla. Apr. 9, 2024) ("Here, Plaintiff asserts that the contract consists of a series of emails, and courts have held that signed email exchanges may constitute a sufficient writing to overcome the statute of frauds."). *See also U.S. Distributors, Inc. v. Block*, No. 09-21635-CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009) ("The Court finds that the e-mails, several of which are signed by the Defendant and the Plaintiff's alleged agents, attached to the complaint meet the writing requirement of the statute of frauds.").

Under the foregoing Florida law, the Emails, all signed by Sullivan, *see* Exhs. A-C, clearly meet this "flexible standard" for satisfying Florida's Statute of Frauds and rendering the parties' consent to the modification of the Agreement a "writing . . signed by the party to be charged therewith." Fla. Stat. § 725.01.

Additionally, "a myriad of reported cases recognize that the doctrine of part performance removes a contract from the statute of frauds." *Mowder v. Smith*, 390 So. 3d 106, 109 (Fla Dist Ct App 2024). *See also Celano v. Dlabal*, 591 So. 2d 653, 654-655 (Fla. 1st DCA 1991)("It is well established in Florida that part performance will remove an oral contract from the statute of frauds and enable it to be specifically enforced in equity. This part performance doctrine ensures that the statute of frauds cannot itself become an instrumentality of fraud."). Here, Glorieta has partially performed under the modified Agreement. *See, e.g.*, Countercl., ¶¶ 18-24. Also, as discussed above (and more fully below, Section IV), the refusal to enforce the modified Agreement would make the transaction a fraud upon Glorieta, as it detrimentally relied on R4's promises to take responsibility for certain repairs and manage certain aspects of the Project, and will end up receiving nothing from these unfulfilled promises.

In sum, the modified Agreement complies with the Statute of Frauds.

## II.    R4 BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV).

Glorieta alleges that R4 breached the implied covenant of good faith and fair dealing by undertaking the responsibility to secure the issuance of a Form 8609 and to manage certain repairs at the Property, and then reneging on these promises. Counter-Defendants' lone challenge to this claim is that "Counter-Plaintiffs do not specify which express contractual terms – written or verbal – R4 failed to perform." Mot. at 13. But they do.

Specifically, Glorieta alleges that R4 agreed to oversee certain repair work at the property and to obtain the Form 8609, but failed to do so. *See* Countercl., ¶¶ 40-41. Glorieta also repeatedly refers to these specific promises as obligations under the Agreement, as modified, that R4 breached. *See* Countercl., ¶¶ 16-17, 24, 32.

Because Glorieta has clearly alleged the specific terms of the Agreement as modified that R4 breached, and Glorieta has plausibly alleged that these breaches were committed "for [R4's] own benefit," *i.e.*, to maximize its profits at the expense of Glorieta*,* Countercl., ¶ 22, they have satisfactorily alleged a claim for breach of the implied covenant of good faith and fair dealing under Florida law. *See, e.g., Virtus Pharms., LLC v. Woodfield Distrib*., LLC, 2022 U.S. Dist. LEXIS 128957, *36-37 (M.D.Fla. July 20, 2022) (breach of the implied covenant alleged where plaintiff alleged that defendants "intentionally breached these obligations" for profit.).

## III.    COUNT I STATES A STRAIGHTFORWARD CLAIM FOR BREACH OF THE PARTNERSHIP AGREEMENT.

In Count I of the Counterclaim, Glorieta asserts that R4 breached the Agreement "by failing to fund the amounts due under Section 3.3 thereof and by wrongfully removing the general partners under Section 6.2, without limitation." Countercl., ¶ 31. Counter-Defendants seek to dismiss this portion of Count I, arguing that that Glorieta "fail[s] to allege which payments were not made or

whether the conditions precedent to such payments had been met" under Section 3.3, Mot. at p. 16 and because the Counterclaim does not "state any facts to support their position that R4 did not have cause to exercise its removal rights under Section 6.2." *Id.* Counter-Defendants are wrong on both counts.

**First**, the Counterclaim clearly alleges that R4 breached Section 3.3 of the Agreement by failing to pay the fourth installment payment under the Agreement. *See* Countercl., ¶ 39 (referencing R4's "requirement to pay the approximate sum of $4,593,928 to the Counter-Plaintiffs, which was the fourth installment due" under the Agreement."). Moreover, the fact that the "condition precedent" to that payment has not been met does <u>not</u> excuse R4's obligation to make that payment, as R4's misconduct is the reason that condition precedent has not been met. Florida law is clear that:

> One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance. He cannot take advantage of his own wrong in such respect and relieve himself of responsibility to the promisee. 7 Fla. Jur. 2d, Contracts.

*Casale v. Carrigan & Boland, Inc*., 288 So. 2d 299, 301 (Fla. DCA 1974) (plaintiff could not use defendant's failure to satisfy conditions precedent as justification for plaintiff's failure to perform, where plaintiff's misconduct is the cause for the failure of the condition precedent)

Here, R4 promised Glorieta that it would take certain steps, including to pay for and manage the attorneys who would procure the Form 8609s – which procurement was a condition precedent to R4's obligation under the Agreement to pay Glorieta the Fourth Installment. *See* Countercl., ¶¶.¶¶ 39-40. Glorieta reasonably relied on that promise, which R4 subsequently reneged, thereby preventing Glorieta from fulfilling that condition. Florida law does not reward such misconduct, and instead, dictates that R4's obligation to pay the Fourth Installment has been

triggered despite the non-occurrence of the condition precedent. Hence, Glorieta has sufficiently alleged a breach of Section 3.3 of the Agreement due to R4's failure to make the Fourth Installment payment. *See Casale,* 288 So. 2d at 301 ("The defendant cannot take advantage of its conduct in the premises and the plaintiff did, therefore, make out a more than sufficient case to withstand a motion for directed verdict"); *Brickell Bay Club Condominium Ass'n v. Hernstadt*, 512 So. 2d 994, 997 (Fla. DCA 1987) ("One who prevents the performance of a contractual condition precedent cannot avail himself of his own wrong by claiming damages owing to the other party's failure to perform as promised. . . .").

Likewise, Glorieta has sufficiently pleaded a breach of Section 6.2 of the Agreement. The Agreement only permits the removal of Glorieta for cause, Mot., p. 16, and the Counterclaim clearly alleges that R4's removal of Glorieta in this case was not for "cause." Countercl., ¶ 31. The Counterclaim further allege that R4's basis for removal was pretextual, and was motivated by R4's desire to take all the profits from the partnership for itself. Counterclaim, Seventh Affirmative Defense, ¶¶ 26, 57. Removal on these grounds is not a "cause" under Section 6.2. Accordingly, Glorieta has alleged a claim for breach of Section 6.2 of the Agreement in addition to Section 3.3.[4]

## IV.    GLORIETA HAS ALLEGED FRAUD WITH SUFFICIENT PARTICULARITY (COUNT V).

Glorieta alleges that Counter-Defendants fraudulently misrepresented that R4 would fund and manage certain aspects of the repair work needed at the property and fund and manage the partnership's efforts to obtain the needed Form 8609, when they had no intention of ever doing so. *See* Countercl., ¶ 46. Counter-Defendants seek to dismiss this claim because Glorieta fails to meet

---

[4] It is of no moment that R4 would like the Court to believe that HUD's abatement of its contract was the true "cause" for Glorieta's removal. *See* Mot., p. 16. At this stage in proceedings, the survival of Glorieta's claim does not turn on R4's self-serving testimony as to why it removed Glorieta. *Time Warner*, 282 F.3d at 152 (Court assessing 12(b)(6) motion must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.").

Rule 9(b)'s heightened pleading standard for fraud by (1) grouping all three defendant in the same single allegation, (2) failing to support their allegations that defendants knew the representations were false and made them with the intention of inducing Glorieta's reliance, and (3) failing to allege that Glorieta reasonably relied on these representations and that they suffered damages as a result of the alleged fraudulent representation. Mot., at pp. 17-20. Counter-Defendants' arguments are all without merit.

**First**, the Counterclaims clearly identify false statements made by Sullivan on behalf of R4. Each of the Emails identifies him as the author of false representations that R4 has taken control over funding, assisting and managing certain aspects of the repair work needed at the property. *See* Exh. A-C.

**Second**, "the adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific." *United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Resp., Inc*., 865 F.3d 71, 81 (2d Cir. 2017). Accordingly, a plaintiff can attribute fraudulent statements to a group when "the complaint gives grounds for attributing the statements to the group." *Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 374-375 (S.D.N.Y. 2024). Such grounds exist where, as here, Defendants are alleged to have acted "as the same entity." *Id. See also SEC v. Sugarman*, 2020 U.S. Dist. LEXIS 181034, *15-16 (S.D.N.Y. Sept. 30, 2020) (denying motion to dismiss group-pled fraud claims; "this Court can hardly fault the SEC for the fact that Sugarman and Galanis acted in concert and . . . the Complaint adequately puts Sugarman on notice of his role in the allegedly fraudulent scheme.")

Here, the Counterclaim alleges that Schnitzer and Sullivan worked in tandem on a joint scheme to defraud Glorieta. It states that they "control and manage R4" and "authorized decisions on behalf of the Partnership that were contrary to the Partnership's and Counter-Plaintiff's

interest." Countercl., ¶ 56. These allegations give rise to the reasonable inference that they acted "as the same entity" to jointly mispresent to Glorieta that R4 would fund and oversee certain repairs work and procurement of the Form 8609s. *Id.* ¶ 46. As such, Glorieta's fraud allegations satisfy Rule 9(b).

**Third**, Rule 9(b) does not require that scienter be pled with specificity, stating that "**[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally**." Fed. R. Civ. Pro. 9(b) (emphasis supplied). "The Second Circuit has recognized that the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity . . . for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *ML Fashion, LLC v. Nobelle GW, LLC*, 2022 U.S. Dist. LEXIS 18634, *22-23 (D Conn Feb. 2, 2022). Here, Glorieta's allegations regarding Counter-Defendants' scienter are far more than "alleged generally" (let alone catch-all conclusions). The Counterclaim specifically alleges that "in many cases," Schnitzer and Sullivan "authorized decisions on behalf of the Partnership that were contrary to the Partnership's and Counter-Plaintiff's interest," and that, in keeping with this conduct, they acted "for [their] own benefit" by making empty promises to Glorieta that induced Glorieta to "continue investing in the Project" while they ceased to do so. Countercl., Second Affirmative Defense, ¶¶ 42, 48, 57.

**Fourth**, contrary to Counter-Defendants' contention, "whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered <u>in</u>appropriate for determination on a motion to dismiss." *Robinson*, 2025 U.S. Dist. LEXIS 129583 at *14-15 (emphasis supplied).

In any event, "the burden at this stage is not onerous," and Glorieta has carried it. *Robinson*, 2025 U.S. Dist. LEXIS 129583, *14-15. As alleged throughout the Counterclaim, Glorieta relied

not only on the verbal representations of the individuals who "managed and controlled" R4, but also on their written statements to third persons stating that R4 has undertaken obligations to manage and control repairs at the Property, exactly as they promised Glorieta. Such reliance is reasonable under the circumstances. *See id*. ("In this case, Defendants' reliance on the signed statements of Plaintiff—and not merely on an unsigned resume—is also reasonable. Defendants' Counterclaim thus sufficiently demonstrates reasonable reliance on Plaintiff's statement of his birth year.").

**Finally**, Glorieta satisfied its pleading burden as to damages for a number of reasons. At the pleading stage, "allegations of damages can be highly general" as "the particularity requirement of Rule 9(b) does not apply to damages." *Robinson*, 2025 U.S. Dist. LEXIS 129583, *17-18 ("Specification of damages is the province of initial disclosures and discovery under Federal Rule of Civil Procedure 26 and not of the complaint."). Moreover, Paragraph 73 of the Counterclaim specifies the damages, stating that Glorieta seeks "compensatory damages in an amount to be determined at trial, but not less than $4,593,928, plus all equity value in the Project that Counter-Plaintiffs would have realized absent Counter-Defendants' wrongful conduct." *Id.* Accordingly, Gloria has sufficiently pled damages to survive a motion to dismiss. *See Robinson*, 2025 U.S. Dist. LEXIS 129583, *17 (denying motion to dismiss counterclaim for, among other things, failure to allege damages with Rule 9(b) specificity).

## V.    THE COUNTERCLAIM PROPERLY ALLEGES THAT R4 BREACHED ITS FIDUCIARY DUTIES TO GLORIETA (COUNT VI)

Count VI of the Counterclaim seeks relief for R4's breach of its fiduciary duties to Glorieta. Counter-Defendants seek to dismiss this claim under the independent tort doctrine, which is "rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. Dist.

Ct. App. 2017). Mot. p. 20. They also argue for the dismissal of this claim on the ground that R4 does not owe fiduciary duties to Glorieta, and thus, it was "not prohibited from taking an action merely because that action furthers the limited partner's own interest." *Id.,* p. 21. Counter-Defendants are wrong on all counts.

**First**, the independent tort doctrine does not bar Glorieta's breach of fiduciary duty claim. The independent tort doctrine only precludes a plaintiff from recovering in tort for a contract dispute. *Kova Commer. of Naples, LLC v. Sabin*, 2024 U.S. Dist. LEXIS 38847, *22-23 (M.D. Fla. Mar. 6, 2024). But, "a plaintiff can plead as many alternative claims as he wants, 'regardless of consistency.'" *Id.* Here, Glorieta's breach of fiduciary duty claim is pled in the alternative to its breach of contract claim, and should not be dismissed as duplicative, even though it does not use the magic words "in the alternative." *Id.* (denying motion to dismiss KOVA's breach of fiduciary duty claim under Florida's independent tort doctrine because "a plaintiff can plead as many alternative claims as he wants, 'regardless of consistency.'"). *See also Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010) ("In New York, the so-called "economic loss" rule provides that "[i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort. . . .Therefore, at this stage, the Court views Plaintiffs' tort claims as alternative pleadings in the event that their contract claims fail.").

**Second**, despite being a limited partner, R4 absolutely *does* owe fiduciary duties to Glorieta in this case. Under Fla. Stat. § 620.1305, "to the extent a limited partner is vested with or delegated management powers or duties under the partnership agreement," the limited partner has "fiduciary duties . . .to the limited partnership and the other partners with respect to the exercise of such powers or duties are those duties described in s. 620.1408," which includes the duties of loyalty and care. *See* Fla. Stat. § 620.1408. Indeed, courts have recognized that fiduciary duties are created

when a party is placed in a position of management and control. *See, e.g., Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. DCA 2003) ("special circumstances" may impose a fiduciary duty where the lender takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or *exercises extensive control*."); *Interland, Inc. v. Bunting*, 2005 U.S. Dist. LEXIS 36112, *11 (ND Ga Mar. 31, 2005) ("a fiduciary relationship does exist where one person gives another the authority to manage a business or otherwise control assets, and the other relinquishes similar authority.").

Here, as alleged throughout the Counterclaim, R4 was vested with or delegated management powers under the Agreement as amended. *See, e.g.*, Countercl., ¶¶ 15-17 (R4 agreed to fund and supervise certain repair work at the Property and the procurement of Form 8609s.). Indeed, Count VI specifically identifies R4's assumption of these responsibilities as the basis for R4's fiduciary duties. *See* Countercl. ¶ 52 ("By agreeing to actively participate in the management of the partnership, Counter-Defendant, R4 GL ACQUISITION owed fiduciary duties to the Partnership and to the Counter-Plaintiffs."). R4 breached those duties when it reneged on those commitments in order to maximize R4's short-term gain at the expense of the partnership. Specifically, R4's financial interest in the property was for the tax credits it would generate, and the Counterclaims allege that R4 already took approximately $23,361,774 in tax credits and $11,575,680 in losses generated by the Project. *Id.* at ¶ 29. Once R4 received its financial benefit from the Project, it abandoned its duty to work with Glorieta on the Project. This misconduct constituted a breach of R4's fiduciary duties of loyalty and care, and therefore, Glorieta has sufficiently pled a breach of fiduciary claim. *Gossett v. St. Paul Fire & Marine Ins. Co.*, 427 So. 2d 386, 387 (Fla. DCA 1983) ("The duty to share in any losses which may be sustained means that each joint venturer must be responsible or liable for losses created by the venture and any liability

to creditors or third parties."); *De Ribeaux v. Del Valle*, 531 So. 2d 992, 994 (Fla. DCA 1988) (reversing dismissal of breach of fiduciary claim where plaintiff alleged that his partner used the partnership for his personal financial gain at the expense of the partnership).

## VI.   THE COUNTERCLAIM PROPERLY ALLEGES THAT SCHNITZER AND SULLIVAN AIDED AND ABETTED R4'S BREACH OF ITS FIDUCIARY DUTIES (COUNT VII).

In Count VII of the Counterclaim, Glorieta asserts that Schnitzer and Sullivan aided and abetted R4's breach of its fiduciary duties. Counter-Defendants argue that Count VII should be dismissed because (1) R4 did not owe fiduciary duties in the first place and (2) Glorieta insufficiently alleges the knowledge and substantial assistance elements of the claim. Counter-Defendants are wrong on both counts. *See* Mot., pp. 23-26.

First**,** as discussed above, R4 has fiduciary duties to the Partnership and Glorieta. Second, also as discussed, at the pleading stage, Glorieta need not plead "knowledge" with particularity even under the heightened pleading standard required for fraud, let alone for a claim of aiding and abetting breach of a fiduciary duty; instead, knowledge may be pled "generally." *See* Fed. R. Civ. P. 9(b). In fact, in the aiding and abetting fiduciary duty context, knowledge is sufficiently alleged when it can be "discerned from the surrounding circumstances." *Cyganowski v. Beechwood Re Ltd. (In re Platinum-Beechwood Litig.)*, 427 F. Supp. 3d 395, 441 (S.D.N.Y. 2019).

Here, Glorieta alleges sufficient non-conclusory facts from which Schintzer's and Sullivan's knowledge and substantial assistance can readily be inferred. At risk of stating the obvious, "a corporation cannot act on its own and only management can receive notice." *McKenzie v. United States Tennis Ass'n Inc.*, 2024 U.S. Dist. LEXIS 27286, *12 (MD Fla Feb. 16, 2024). *See also SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1360-1361 (S.D. Fla 2013) ("**Like a corporation**, a city does not have a state of mind of its own. Its scienter is found in the acts, statements, and

state of mind of its agents.") (emphasis supplied). Here, the Counterclaim alleges that Schnitzer

and Sullivan are not only the agents of R4 but are the very ones that "control and manage R4."

Countercl., ¶56. *See also* Dkt No. 61-1 (designating Schnitzer as the addressee of all "All notices,

approvals, consents or other communications to be delivered under this Agreement or under any

of the Closing Documents."). As such, it is (at least) reasonably inferable that they knew of – if

not caused – R4's promise to actively participate in the management of the partnership and that

they substantially assisted, if not exclusively caused, R4 to not fulfil these promises. Accordingly,

Count VII is adequately alleged.

## VII.    THE EQUITABLE ACCOUNTING (COUNT IX) AND UNJUST ENRICHMENT (COUNT X) CLAIMS ARE PLED IN THE ALTERNATIVE.

Counts IX and X of the Counterclaim assert claims for equitable accounting and unjust

enrichment, respectively. The Motion seeks to dismiss both counts as duplicative of the breach of

contract claims in Counts I and II. It additionally seeks to dismiss Count IX on the grounds that

R4 does not owe fiduciary duties to Glorieta. Both arguments fail.

First, the equitable accounting and unjust enrichment claims are appropriately pled in the

alternative. *Salameno v. Rawlings*, 2021 U.S. Dist. LEXIS 53454, *51-52 (S.D.N.Y. Mar. 22, 2021)

("Other courts have allowed breach of contract and accounting claims to proceed when pleaded in

the alternative . . . Plaintiffs are free to plead alternative causes of action, and these causes of action

are distinct from the breach of the duty of loyalty claim, which arises directly from the contract

itself."); *Anwar v. Fairfield Greenwich, Ltd*., 728 F. Supp. 2d 372, 421 (S.D.N.Y. 2010) (denying

motion to dismiss unjust enrichment claim as duplicative of breach of fiduciary duty claim; "at

this stage, Plaintiffs are entitled to the alternative pleading authorized by Federal Rule of Civil

Procedure 8(d)(2)."). Second, as discussed above, R4 owed fiduciary duties to Glorieta. Accordingly, Counts IX and X of the Counterclaim should not be dismissed.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Motion and award any other relief it deems necessary and proper.

Dated: December 10, 2025

<div style="margin-left:40%">

Respectfully submitted,

GULKO SCHWED LLP

By:*/s/ Samuel Kadosh*
Samuel Kadosh
Asher Gulko
525 Chestnut Street, Suite 209
Cedarhurst, New York 11516
212-634-7927
skadosh@gulkoschwed.com

</div>

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and that it contains 8,198 words, exclusive of the caption, table of contents, signature blocks, and required certificates.

/s/ Samuel Kadosh

---

[5] To the extent the Court is inclined to dismiss any portion of the Counterclaim based on a pleading defect – such as failure to plead in the alternative or because a claim is duplicative of another – Second Circuit law mandates that such dismissal should be without prejudice. *See, e.g.*, *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 363 (2nd Cir. 2023) ("in the absence of a valid rationale like undue delay or futility, it is improper to simultaneously dismiss a complaint with prejudice under Rule 12(b)(6) and deny leave to amend when the district court has not adequately informed the plaintiffs of its view of the complaint's deficiencies").