UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R4 GL ACQUISITION, LLC, a Delaware limited liability company,<br><br>      Plaintiff and Counterclaim Defendants,<br><br>   v.<br><br>GLORIETA LLC, a Florida limited liability company and NEW VISION GLORIETA, LLC, a Florida limited liability company,<br><br>      Defendants and Counterclaim Plaintiffs<br><br>   and<br><br>GLOBE-OP DEVELOPMENT, LLC, a Florida limited liability company, CREATIVE CHOICE HOMES, INC., a Florida corporation, NAIMISHA CONSTRUCTION, INC., a Florida corporation, DILIP BAROT, an individual, and NAIMISHA BAROT, an individual,<br><br>      Defendants,<br><br>   v.<br><br>CHRIS SULLIVAN, an individual, MARC SCHNITZER, an individual, and GLORIETA PARTNERS LTD., a Florida limited partnership,<br><br>      Third-Party Defendants. | Case No.: 25-cv-00944-NRB |

**PLAINTIFF R4 GL ACQUISITION, LLC AND THIRD-PARTY DEFENDANTS CHRIS SULLIVAN AND MARC SCHNITZER'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I. Counter-Plaintiffs fail to state a claim for breach of the Partnership Agreement as modified by agreement or course of dealing............................................................. 2

        A. Counter-Plaintiffs do not plausibly allege written consent to modification of the Partnership Agreement. ....................................................................................... 2

        B. Along with the non-existence of a writing, Counter-Plaintiffs also do not plausibly allege oral modification of the Partnership Agreement. ......................................... 4

        C. Counter-Plaintiffs fail to state a claim for breach of the Partnership Agreement as written. ................................................................................................................. 5

    II. Counter-Plaintiffs' remaining allegations fail as duplicative of Counter-Plaintiffs' breach of contract claims. ............................................................................................. 6

        A. Counter-Plaintiffs' breach of the covenant of good faith and fair dealing claim must be dismissed. ................................................................................................. 6

        B.    Counter-Plaintiffs' fraudulent misrepresentation claim must be dismissed........ 7

        C. Counter-Plaintiffs' remaining tort and equitable claims must similarly be dismissed........................................................................................................... 10

CONCLUSION.......................................................................................................................11

Plaintiff and Counter-Defendant R4 GL Acquisition, LLC ("R4") and Third-Party Defendants Marc Schnitzer and Chris Sullivan (collectively, the "Third-Party Defendants") hereby file this Reply in Support of their Motion to Dismiss the Second Amended Counterclaim (ECF No. 115) (the "Motion to Dismiss").

**INTRODUCTION**

The Second Amended Counterclaim (ECF No. 104) ("SAC") depends on the utterly baseless allegation that R4 and Counter-Plaintiffs, as the parties to the Partnership Agreement, orally modified that agreement in or around 2022, resulting in R4 taking on responsibilities that the Partnership Agreement clearly delegated to Counter-Plaintiffs. Faced with the Partnership Agreement's clear contractual provisions requiring written consent for any modification, Counter-Plaintiffs insist that a mere four emails that do not so much as mention the Partnership Agreement or any modification of the parties' roles and responsibilities somehow transform the parties' relationship, conveniently relieving Counter-Plaintiffs of their contractual obligations and instead assigning those obligations to R4. Moreover, the SAC's assertion that the Partnership Agreement was orally modified fails to set forth any consideration to R4 to take on additional responsibilities.

Not content with its breach of contract claim, Counter-Plaintiffs then reassert these exact same facts to manufacture duplicative claims for breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, breach of fiduciary duties, equitable accounting, and unjust enrichment. In a misguided attempt to avoid liability for their own actions, Counter-Plaintiffs also attempt to implicate two of R4's principals, Marc Schnitzer and Chris Sullivan. *See generally*, Amended Complaint (ECF No. 61).

Although at the motion to dismiss stage a court must accept as true the factual allegations contained in a complaint, those allegations must be ***plausible***. *See Bell Atl. Corp. v. Twombly*, 550

1

U.S. 544, 570 (2007). The SAC does not meet this basic standard, instead alleging implausible facts with no basis in applicable law. For the reasons detailed below – and as set forth in the Motion to Dismiss – each of Counter-Plaintiffs' claims fail under F.R.C.P. 12(b)(6). R4 and Third-Party Defendants respectfully request that the SAC be dismissed with prejudice.

## ARGUMENT

I. **Counter-Plaintiffs fail to state a claim for breach of the Partnership Agreement as modified by agreement or course of dealing.**

Counts I through IV of the Counterclaim rely on an invented modification of the Partnership Agreement by oral modification. *See* SAC ¶¶ 16-18, 32, 35, 34, 40-41.

    A. <u>Counter-Plaintiffs do not plausibly allege written consent to modification of the Partnership Agreement.</u>

In their Response, Counter-Plaintiffs assert that the four emails from Third-Party Defendant Chris Sullivan cited in the SAC "demonstrate R4's written consent to the modified terms." Response at 7. In essence, Counter-Plaintiffs' position appears to be that Mr. Sullivan intentionally or accidentally agreed to modify the entirety of the Partnership Agreement through communications *with third parties* that do not even mention the Partnership Agreement, much less an attempt to modify it.

In support of their position, Counter-Plaintiffs cite to cases for the proposition that emails exchanged in the ordinary course ***between parties*** to a written contract can be deemed to be a binding modification of the contract. *See McGuire v. Adex Corp.*, No. 8:15-CV-2670-T-27AAS, 2017 WL 1422426, at *3 (M.D. Fla. Apr. 19, 2017) (email exchange between plaintiff and his employer did not constitute an enforceable contract amendment as material terms were left open for discussion); *HTC Leleu Fam. Tr. v. Piper Aircraft, Inc.*, 571 F. App'x 772, 776 (11th Cir. 2014) (emails *between parties* memorializing a modified contract along with full performance of the

2

modified contract supported claim for oral modification); *BrewFab, LLC v. 3 Delta, Inc.*, No. 22-11003, 2022 WL 7214223, at *4-5 (11th Cir. Oct. 13, 2022) (text message *from one party to another* setting forth the terms of an agreement created a binding obligation on the author).

Counter-Plaintiffs' cited case law is inapplicable here. Instead of emails or text messages **between parties** that ***memorialize the terms of a modified agreement***, Counter-Plaintiffs' allegations are based on four emails from Mr. Sullivan that do not so much as mention a contractual term or amendment. Only one of the four emails is even between Mr. Sullivan and one of the Counter-Plaintiffs, and that email clearly states R4's role *as limited partner*. *See* SAC ¶ 19. Indeed, the alleged "written consent" to modify the terms of the Partnership Agreement that Counter-Plaintiffs ask the court to read into the four emails is nothing more than R4 exercising its existing rights under the Partnership Agreement. *See, e.g.*, Am. Compl. Ex. A § 14.16.1 (establishing R4's contractual right *as Investor Limited Partner* to approve construction change requests); § 11.3.6 (requiring Counter-Plaintiffs to submit to R4 for its review any submissions in connection with obtaining Form 8609s, a prerequisite to qualifying for Housing Tax Credits).

As R4 identified in its Motion to Dismiss, the SAC fails to allege any consideration that R4 received to which it was not already entitled under the Partnership Agreement. *See* Motion to Dismiss at 10. The Response asserts that R4 received independent consideration "through the additional powers it had under the modified Agreement." Response at 12. The SAC, however, does not allege any such consideration, and Counter-Plaintiffs' attempt to "amend" the SAC through statements made for the first time in their Response is impermissible. *See* SAC ¶¶ 16-18 (summarizing the parties' alleged "agreement" to modify the Partnership Agreement but stating no facts in support of consideration to support that agreement); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that a party may not "amend" its pleadings through

3

statements in motion papers); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) (granting motion to dismiss for breach of oral agreement where the alleged agreement fell within the statute of frauds and was required to be in writing; plaintiff could not "'cure' his pleading deficiencies in the complaint by addressing them in his motion papers").

The SAC fails for the simple reason that it does not sufficiently allege that the parties agreed to, and exchanged consideration for, a written modification of the Partnership Agreement.

B. <u>Along with the non-existence of a writing, Counter-Plaintiffs also do not plausibly allege oral modification of the Partnership Agreement.</u>

Counter-Plaintiffs similarly fail to allege an oral modification of the Partnership Agreement. *See* Motion to Dismiss at 7-11. As Counter-Plaintiffs recognize, a contract that contains a no-oral-modifications clause may still be modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it. *See Prof. Ins. Co. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956). But the SAC does not sufficiently allege that the parties orally modified the Partnership Agreement, much less that the parties accepted and acted upon the alleged modification in such a way as would work a fraud on either party to fail to enforce it.

Although Counter-Plaintiffs attempt to distinguish between state and federal applications of Florida's well-established *Cahill* doctrine – and even manufacture an entirely unsupported standard more favorable to them, *see* Response at 10 – they ultimately acknowledge that the distinction, if any, is immaterial.[1] *See* Response at 11. Whether the issue is framed using the one-

---

[1] R4 notes that, far from creating a "more restrictive" test separate and apart from the *Cahill* standard, *Okeechobee* merely applies and clarifies the *Cahill* standard. *See* Response at 11; *Okeechobee Resorts, L.L.C.*, 145 So. 3d at 995 ("*Cahill* undoubtedly remains our Supreme Court's governing precedent on the question of when a party may enforce an alleged oral modification of a written contract which expressly requires that any modification be in writing."). Counter-Plaintiffs' attempt to distinguish between *Cahill* and *Okeechobee* is, thus, meritless.

4

sentence standard set forth in *Cahill* or the three factors set forth in *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, a party asserting a contract modification **must** show that the modification was accepted and acted upon by the parties. 145 So. 3d 989, 993-95 (Fla. DCA 2014). Counter-Plaintiffs have not asserted plausible facts to meet this burden.

In fact, the Third and Fourth Installment Payment Date Certificates demonstrate that the parties continued to act under the original Partnership Agreement. *See* Am. Compl. Ex. J, Ex. K. Indeed, the Fourth Installment Payment Date Certificate, executed in November 2022 – at the end of the year in which Counter-Plaintiffs allege the parties modified their contractual obligations – clearly states that the **General Partners** (that is, **Counter-Plaintiffs**) were taking all commercially reasonable efforts to obtain the Form 8609s. *See* Am. Compl. Ex. K ¶ 3. Thus, the SAC's insufficient allegations are also expressly contradicted by Exhibit K of the Amended Complaint.

C. <u>Counter-Plaintiffs fail to state a claim for breach of the Partnership Agreement as written.</u>

Counter-Plaintiffs assert that R4 breached Section 3.3 of the Agreement by failing to pay the Fourth Installment Payment under the Partnership Agreement. *See* SAC ¶ 39. In its Motion to Dismiss, R4 identified that the conditions precedent to the payment of the Fourth Installment Payment had not been met, thereby excusing any alleged nonperformance. *See* Motion to Dismiss at 13-14. Counter-Plaintiffs now assert that R4's obligations were not excused because its own misconduct was the reason that the conditions precedent were not met. *See* Response at 16. Even taking Counter-Plaintiffs' allegations that the parties modified the Partnership Agreement as true, Counter-Plaintiffs' argument that R4 was responsible for the conditions precedent is unavailing. One of the conditions precedent to payment of the Fourth Installment was "Rental Achievement" as defined in the Partnership Agreement. *See* Am. Compl. Ex. K. As set forth in the Fourth Installment Payment Date Certificate, however, Rental Achievement had not occurred, and yet R4

5

still made a Fourth Installment payment. Moreover, Rental Achievement remained Counter-Plaintiffs' responsibility, and their failure to attain this condition precedent excused R4's payment of the Fourth Installment.[2]

Counter-Plaintiffs also assert that R4 breached Section 6.2 of the Partnership Agreement because R4 did not have cause to remove Counter-Plaintiffs as general partners of the Partnership. But the Amended Complaint attaches HUD's notification to Counter-Plaintiffs and Counter-Plaintiff's property manager that HUD was abating the Housing Assistance Payment Contract ("HAP") due to Counter-Plaintiffs' repeated and substantial defaults of that agreement, resulting in the Partnership's loss of its principal source of revenue. *See* Am. Compl. Ex. H. This alone demonstrates cause for removing the former General Partners. *See* Am. Compl. Ex. A § 6.2.

For these reasons, and as further detailed in the Motion to Dismiss, Count I fails to state a claim for breach of an express term of the Partnership Agreement and must be dismissed.

## II. Counter-Plaintiffs' remaining allegations fail as duplicative of Counter-Plaintiffs' breach of contract claims.

Counter-Plaintiffs' remaining allegations against R4 and Third-Party Defendants are dependent on, and therefore duplicative of, Counter-Plaintiffs' claims for breach of the Partnership Agreement as modified. Counts IV, V, VI, VII, IX, and X must therefore be dismissed.

### A. Counter-Plaintiffs' breach of the covenant of good faith and fair dealing claim must be dismissed.

Counter-Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count IV) is based on their allegation that R4 agreed to modify the terms of the Partnership Agreement. As such, should the Court allow Counter-Plaintiffs' breach of verbal agreement claims

---

[2] Again, R4 disputes that it did not make a Fourth Installment payment. Still, even taking the allegation as true, the exhibits to the Amended Complaint set forth that Rental Achievement did not occur and thus R4 was under no contractual obligation to make this payment.

6

to stand, Count IV should be dismissed as a matter of law. *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) ("[A] breach of the implied duty [of good faith and fair dealing] may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract.").

On the other hand, to the extent that the Court rejects Counter-Plaintiffs' alleged oral modification argument, any breach of the implied duty of good faith and fair dealing would be in derogation of the express terms of the written contract – which assigns the obligations that Counter-Plaintiffs allege R4 breached to Counter-Plaintiffs themselves – and therefore fails as a matter of law. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317-18 (11th Cir. 1999) ("[A] cause of action for breach of the implied covenant cannot be maintained . . . in derogation of the express terms of the underlying contract . . . .").

Accordingly, regardless of the Court's ruling as to Counts I and II of the SAC, Count IV must be dismissed as a matter of law.

B. Counter-Plaintiffs' fraudulent misrepresentation claim must be dismissed.[3]

As set forth in the Motion to Dismiss, the SAC fails to plead fraud with sufficient particularity. *See* Motion to Dismiss at 15-18. In their Response, Counter-Plaintiffs argue that their fraud allegations permissibly lumped together R4 and Third-Party Defendants. However, even accepting that argument as true, Count V for fraudulent misrepresentation remains deficient under the applicable heightened pleading standard. *See, e.g.*, *Vaughn v. Air Line Pilots Assoc.*, No. 08-

---

[3] R4 and Third-Party Defendants maintain that Counter-Plaintiffs' fraudulent misrepresentation count is procedurally improper. As set forth in R4 and Third-Party Defendants' letter to the Court objecting to the SAC (ECF No. 108), the Court granted Counter-Plaintiffs leave to file the SAC "for the specific purpose of adding the email referenced in [their] letter and for no wider purpose." *See id.*, citing ECF No. 94. Disregarding the Court's clear instruction, Counter-Plaintiffs added an *entire cause of action* – that is, the fraudulent misrepresentation count – to the SAC. *See id.*

7

4173-CV, 2010 WL 3582661 at *2 (2d Cir. May 14, 2010) ("[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations," and "a plaintiff must still allege facts that give rise to a strong inference of fraudulent intent") (internal citations omitted); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999) (dismissing a fraud claim because plaintiff failed to plead facts supporting its "catch-all allegation" that it relied on the allegedly fraudulent statements).

  A fraud claim may not simply restate a claim for breach of contract. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). General allegations that a defendant entered into a contract without intent to perform it are insufficient to support a fraud claim. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y. 2d 308, 318 (1995). *See also Sudal v. Computer Outsourcing Serv.*, 868 F. Supp. 59, 60 (S.D.N.Y. 1994) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."). In fact, to maintain simultaneous causes of action for breach of contract and fraud, a plaintiff must either (i) demonstrate a legal duty separate from any duty to perform; or (ii) demonstrate a fraudulent representation collateral or extraneous to the contract; or (iii) seek special damages caused by the misrepresentation and unrecoverable as contract damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

  The SAC does not meet this burden. Instead, Counter-Plaintiffs' fraud claim simply alleges that R4 entered into an oral modification of the Partnership Agreement without the intent to perform pursuant to that alleged modification. Counter-Plaintiffs demonstrate neither a legal duty

8

separate from R4's alleged duty to perform under the fabricated contract modification or a fraudulent representation other than Counter-Plaintiffs' creative interpretation of the four emails.

Counter-Plaintiffs' argument that R4, Sullivan, and Schnitzer should be treated "as the same entity" for purposes of the fraud allegations is similarly unavailing. *See* Response at 18. Although there are instances in which fraud claims may be pled against defendants acting in concert, "clump[ing] together" several defendants "in vague allegations" is unacceptable. *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993); *see also In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996) (granting motion to dismiss for failure to plead fraud with particularity where "the Complaint never delineat[ed] the wrongdoing of any of the particular [] Defendants"), *SEC v. Sugarman*, No. 19-cv-5998, 2020 WL 5819848, at *6 (S.D.N.Y. Sept. 30, 2020) (holding that allegations against two individual defendants satisfied Rule 9(b) because plaintiff provided particularized facts as to why each defendant should be implicated). Counter-Plaintiffs offer no such particularized facts – in fact, the SAC contains no allegations at all against Mr. Schnitzer. Rather, Counter-Plaintiffs cite to a case in which the court attributed an individual defendant's misrepresentations to three entities of which the individual was the sole officer, employee, and/or agent. *See Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 374 (S.D.N.Y. 2024). That case is inapposite here, where Counter-Plaintiffs appear to ask the Court to attribute a business organization's fraud to two individuals who Counter-Plaintiffs only allege "control and manage" that business organization. *See* SAC ¶ 56.

For these reasons, in addition to the reasons set forth in the Motion to Dismiss, Count V must be dismissed as to R4 and the Third-Party Defendants.

C. <u>Counter-Plaintiffs' remaining tort and equitable claims must similarly be dismissed.</u>

Counter-Plaintiffs assert that their claims for breach of fiduciary duties (Count VI), unjust equitable accounting (Count IX), and unjust enrichment (Count X) should survive the Motion to Dismiss because they are pled in the alternative. *See* Response at 21, 24. None of these claims are properly pled in the alternative, however, because they rely on the existence of a modified contract as alleged in Counts I through IV. "A claim is alternative and not duplicative if a plaintiff may fail on one **but still prevail on the other**." *See In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019); *see also NYC Street Tree Consortium, Inc. v. Eber-Schmid*, No. 07-CV-0348(BSJ), 2008 WL 11516553, at *9 (S.D.N.Y. Apr. 21, 2008) (dismissing breach of fiduciary duty claim that relied on the same facts and allegations as a properly pled claim for fraud because plaintiff was, in effect, "pleading the same claim more than once"); *Gianascio v. Giordano*, No. No. 99-CV-1796-GBD, 2003 WL 22999454, at *5 (S.D.N.Y. Dec. 19, 2003) (dismissing plaintiff's unjust enrichment claim because it was dependent on the allegations set forth under breach of contract and fraud claims and thus effectively alleged the existence of an enforceable contract).

Counter-Plaintiffs' breach of fiduciary duties claim relies on a factual finding that, "[b]y agreeing to actively participate in the management of the partnership, [R4] owed fiduciary duties to the Partnership and to the Counter-Plaintiffs" and that R4 breached those duties as set forth in the SAC. *See* SAC ¶¶ 52-53. Above and beyond the fact that a limited partner does not owe fiduciary duties solely by reason of being a limited partner, *see* Fla. Stat. § 620.1305(1), Motion to Dismiss at 20-21, these are the exact same allegations on which Counter-Plaintiffs' breach of contract claims are based. *See* SAC ¶¶ 32, 35, 34. Counter-Plaintiffs' equitable accounting claim is similarly predicated on a finding that "Counter-Plaintiffs entrusted [R4] with oversight of repairs needed for the project and management of the funds contributed by Counter-Plaintiffs to the

Partnership" and that R4 "materially breached the Partnership Agreement" as amended. SAC ¶¶ 65-66. Finally, Counter-Plaintiffs' unjust enrichment claim relies on the alleged fact that R4 "failed to properly fund, manage, and direct repair work" – a duty for which R4 would only be responsible if the Court were to find that the parties modified the Partnership Agreement as alleged in Counts I through IV. SAC ¶ 71. Thus, Counter-Plaintiffs cannot permissibly plead breach of fiduciary duties, equitable accounting, or unjust enrichment in the alternative because their claims are entirely reliant on the contract modification asserted in the breach of contract claims; if, as argued in the Motion to Dismiss and in Section I, *supra*, Counter-Plaintiffs' breach of contract claims fail, so too must Counter-Plaintiffs' tort and equitable claims.

Additionally, as explained in the Motion to Dismiss, should Count VI for breach of fiduciary duties fail, then Count VII for aiding and abetting breach of fiduciary duties must also fail as a matter of law. *See In re Hussing*, 659 B.R. 609, 623 (S.D. Fla. 2024) (plaintiff's aiding and abetting claim necessarily failed because the alleged primary wrongdoer did not owe plaintiff a fiduciary duty).

## CONCLUSION

In light of the foregoing, R4 and Third-Party Defendants respectfully request that the Court dismiss the Second Amended Counterclaim with prejudice.

Dated: December 17, 2025                    HOLLAND & KNIGHT LLP

                                            By: */s/ Cary O. Aronovitz*
                                            Chael J. Clark, Esq.
                                            787 Seventh Avenue, 31st Floor
                                            New York, New York 10019
                                            (212) 513-3404
                                            Chael.Clark@hklaw.com
                                            NY Bar No. 5229299

Israel J. Encinosa, Esq.
Cary O. Aronovitz, Esq.
Kaatje S. Greenberg, Esq.
701 Brickell Ave, 31st Floor
Miami, FL 33131
(305) 789-7520
Israel.Encinosa@hklaw.com (pro hac vice)
Fla. Bar No. 46083
Cary.Aronovitz@hklaw.com (pro hac vice)
Fla. Bar No. 86425
Kaatje.Greenberg@hklaw.com (pro hac vice)
Fla. Bar No. 1059752
*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and that it contains 3,456 words, exclusive of the caption, table of contents, signature blocks, and required certificates.

By: */s/ Cary O. Aronovitz*
Cary O. Aronovitz, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record.

By: */s/ Cary O. Aronovitz*
Cary O. Aronovitz, Esq.