Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

February 25, 2026

**Via ECF**

Honorable Naomi Reice Buchwald
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St. Courtroom 21A
New York, NY 10007

Re: *R4 GL Acquisition LLC v. Glorieta LLC, et al.*, Case No. 1:25-cv-00944
Joint Status Report on Discovery Efforts

Dear Judge Buchwald:

The parties in the above referenced case submit this joint status report on their discovery efforts pursuant to Your Honor's order dated January 26, 2026 (ECF No. 126).

Corporate Defendants timely served their first production of documents on Plaintiff on February 16, 2026. That production contains inspection reports, books and records, and financial data for Glorieta Partners, Ltd. On February 20, 2025, Plaintiff sent the Corporate Defendants a list of deficiencies in Corporate Defendants' production of financial documents including, but not limited to, missing years of general ledger and tax return data. The Corporate Defendants are working on gathering those documents. Plaintiff has also noted that some of the financial records were provided as PDFs and without metadata making it difficult to confirm the date the data was actually created. The Corporate Defendants explained that this financial data was kept in an accounting system called MRI Software, and the financial reports produced were generated by the MRI Software in order to create the reports that Plaintiff requested. Plaintiff will continue to confer with the Corporate Defendants to resolve those deficiencies.

Counsel for the parties met to confer on their discovery efforts on February 19, 2026. Corporate Defendants represented that they ran Plaintiff's search terms, and identified approximately 2.5 million potentially responsive documents, constituting 828.7 GB of compressed data, which once uncompressed, would be roughly 1.5 terabytes of information. Corporate Defendants explained that given the prohibitive cost of uploading this data to an eDiscovery platform, they had not yet uploaded those documents to an eDiscovery platform, and would like to narrow the search parameters before doing so. Plaintiff maintains that once the emails are uploaded to an eDiscovery platform, they can be de-duplicated with the six (6) proposed custodians, and that there is a significant likelihood of substantial duplicated documents.

Plaintiff agreed to consider a potential narrowing of some of Plaintiff's proposed search terms to requested time-frames in an attempt to reduce the total number of documents to be

uploaded. However, Plaintiff believes that the six custodians emails should be preserved and uploaded to an online platform to de-duplicate such documents. Indeed, discovery vendor tools can easily and economically search through even 2.5 million documents. This case involves facts occurring over a 9-year time period, many witnesses/document custodians and allegations of substantial economic harm (over $15 million alleged by Plaintiff and $4.7 million alleged by Defendants). Thus, a robust discovery search commensurate with the needs of the case is warranted.

Corporate Defendants do not object to preserving the emails. However, Corporate Defendants maintain that uploading all 2.5 million emails to an eDiscovery platform will cost approximately $50,000 – before anything else is done – before further limiting terms are run, or the documents are deduplicated. Corporate Defendants maintain that the search terms provided by Plaintiffs are facially overbroad and not proportional to the needs of the case. Plaintiff's terms would capture millions of emails involving the routine day-to-day operations of a 330-unit apartment complex that are entirely irrelevant to this dispute. The claims in this litigation are focused on specific, discrete issues: the adequacy of the 2015 rehabilitation project, the alleged diversion of Partnership funds to Barot-controlled entities, the condemnation of Building 8, the circumstances leading to HUD's abatement of the HAP Contract in April 2024, and the alleged failure to attain Rental Achievement. Plaintiff's search terms are untethered to these issues.

Plaintiff, meanwhile, maintains that the proposed search terms are entirely proper – and indeed necessary – at this early stage of litigation and to preserve the discoverable information. Plaintiff is not seeking 2.5 million responsive documents be produced. It is merely asking that the documents be preserved on an actual e-discovery platform that can de-duplicate them, and then use further tools to produce responsive documents. The Amended Complaint alleges a wide array of ongoing breaches of contract and breaches of fiduciary duties that cannot be adequately captured by narrow search terms and a constrained time period. In fact, the very same day-to-day operations that the Corporate Defendants wish to shield from discovery are central to Plaintiff's claims that they grossly mismanaged the Property, starting with the 2015-2018 rehab and culminating in HUD abating the HAP contract in 2024.

As of the date hereof, the parties have yet to come to a meaningful agreement to move discovery forward in this matter. Plaintiff respectfully requests a discovery conference to resolve their dispute. The Corporate Defendants respectfully request that the Court direct the parties to negotiate narrower terms linked to the specific events, time periods, and issues at issue in the Amended Complaint.

Respectfully Submitted,

/s/ Cary O. Aronovitz

/s/ Samuel Kadosh, on behalf of the Corporate Defendants.

cc: All counsel of record