UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
R4 GL ACQUISITION LLC,
a Delaware limited liability
company,

               Plaintiff,

        - against –

GLORIETA LLC, a Florida limited
liability company, NEW VISION
GLORIETA, LLC, a Florida
limited liability company,
CREATIVE CHOICE HOMES, INC., a
Florida corporation, NAIMISHA
CONSTRUCTION, INC., a Florida
corporation, GLOBE-OP
DEVELOPMENT, LLC, a Florida
limited liability company,
DILIP BAROT, an individual, and
NAIMISHA BAROT, an individual,

              Defendants.

-------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 944 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff R4 GL Acquisition, LLC ("plaintiff" or "R4") brings this suit against defendants Glorieta, LLC, New Vision Glorieta LLC, Creative Choice Homes, Inc., Naimisha Construction, Inc., and Globe-Op Development, LLC (the "Corporate Defendants"), and Dilip and Naimisha Barot (the "Individual Defendants," and together with the Corporate Defendants, "defendants"), seeking monetary damages and an accounting arising from defendants' alleged mismanagement of Glorieta Gardens, a 330-unit multifamily affordable housing

development in Opa-locka, Florida.  In 2015, R4, Glorieta LLC, and New Vision Glorieta, LLC entered into a Partnership Agreement to form Glorieta Partners, Ltd. (the "Partnership") to invest in and rehabilitate Glorieta Gardens and secure low-income housing tax credits.  That relationship deteriorated in 2024, and plaintiff now asserts the following claims: (i) breach of the Partnership Agreement against Glorieta LLC and New Vision Glorieta, LLC (Count I); (ii) breach of the Guaranty Agreement against Creative Choice Homes, Inc., Naimisha Construction, Inc., Globe-Op Development, LLC, and Dilip Barot (Count II); (iii) breach of fiduciary duty against Glorieta LLC and New Vision Glorieta, LLC (Count III); (iv) aiding and abetting breach of fiduciary duty against Dilip Barot, Naimisha Barot, and Naimisha Construction, Inc. (Count IV); (v) indemnification against all defendants (Count V); (vi) breach of the Development Agreement against Globe-Op Development, LLC (Count VI); and (vii) an accounting against Glorieta LLC and New Vision Glorieta, LLC (Count VII).

Presently before the Court is the Individual Defendants' motion to partially dismiss plaintiff's Amended Complaint ("AC") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  The Individual Defendants contend that (i) this Court does not have personal jurisdiction over Naimisha Barot, and

-2-

(ii) plaintiff has failed to state a claim for aiding and abetting breach of fiduciary duty against the Individual Defendants, necessitating dismissal of Count IV against them.  For the reasons stated herein, the Individual Defendants' motion is denied.

## I.    Factual Background[1]

### a. The Partnership and Relevant Agreements

Plaintiff is a Delaware limited liability company with its principal place of business in New York, New York.  AC ¶ 19. Plaintiff is an affiliate of R4 Capital LLC, a nationwide

---

[1]    The Court's account of plaintiff's factual allegations is drawn from the Amended Complaint and the exhibits attached thereto, ECF No. 61 ("AC"), which the Court finds incorporated by reference.  See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  The Court also considers plaintiff's brief in opposition to the Individual Defendants' motion to partially dismiss ("Opp."), ECF No. 102, and the Declaration of Cary O. Aronovitz ("Aronovitz Decl."), ECF No. 103.  The Aronovitz Declaration attaches six exhibits: (i) an organizational chart of Glorieta Partners, Ltd.; (ii) an organizational chart of Globe-Op Development, LLC; (iii) a transcript of the deposition of Naimisha Barot; (iv) the declaration of Chris Zrowka; (v) the declaration of Fitzsandra White; and (vi) an email chain reflecting correspondence among plaintiff, Naimisha Barot, and non-party Jeff Staley.  On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the Court may consider all pleadings and accompanying declarations while "resolving all doubts in [plaintiff's] favor."  DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

Plaintiff filed redacted versions of its opposition brief and the Aronovitz Declaration, while unredacted versions were filed under seal.  ECF Nos. 102, 103, 106, 107.  The redacted material references the percentage ownership interests in the various corporate entities at issue, as shown in the organizational charts, in plaintiff's brief, and in Naimisha Barot's deposition transcript.  Because Ms. Barot's ownership of and control over those entities are central to resolving the motion before the Court, and given that there is no sufficient basis to maintain these materials under seal, the unredacted, sealed versions of plaintiff's brief and the Aronovitz Declaration, ECF Nos. 106-07, are hereby unsealed.

affordable housing investor, lender, and developer that has invested in affordable housing projects since 2011. Id. ¶ 2. R4 Capital LLC's business model is dependent on its ability to make substantial investments in the development and preservation of affordable housing to obtain low-income housing tax credits under Section 42 of the Internal Revenue Code. Id.

In 2015, plaintiff formed Glorieta Partners, Ltd. with defendants Glorieta LLC and New Vision Glorieta, LLC (the "Former General Partners"). Id. ¶ 3. The Former General Partners are both Florida limited liability companies. Id. ¶¶ 3, 22, 24. Three agreements were executed in connection with the Partnership's formation, all dated September 1, 2015: (i) the Partnership Agreement, (ii) the Guaranty Agreement, and (iii) the Development Agreement. Id. ¶¶ 4, 5; see also ECF Nos. 61-1, 61-2, 61-3.

Under the Partnership Agreement, plaintiff agreed to invest up to $15,229,000 in capital to fund the rehabilitation of Glorieta Gardens as the Investor Limited Partner. Id. ¶ 4; Opp. at 1. Most of this capital was to be contributed by plaintiff in four installments upon the Partnership's achievement of several development, occupancy, and financial stabilization targets, as well as the satisfaction of conditions necessary to obtain low-income housing tax credits. AC ¶ 48. Glorieta LLC and New Vision

-4-

Glorieta, LLC served as General Partners and were required to handle the day-to-day management of Glorieta Gardens and oversee the rehabilitation. Id. ¶ 4. The Partnership Agreement contains a forum selection clause stating that "[e]ach Partner (i) irrevocably submits to the jurisdiction of any" New York state or federal court. Id. ¶ 32; ECF No. 61-1 § 16.17. The General Partners under the Partnership Agreement were Glorieta LLC and Globe-Op Development, LLC, and plaintiff was the Investor Limited Partner. ECF No. 61-1 at 1. Globe-Op Development, LLC signed the Partnership Agreement acknowledging its obligations under the agreement as Developer and Guarantor. Id. at 117-20. Creative Choice Homes, Inc., New Vision Glorieta, LLC, Glorieta LLC, and Naimisha Construction, Inc. also signed the Partnership Agreement acknowledging their obligations under the agreement as Guarantors. Id. CT Services, LLC signed the Partnership Agreement acknowledging its obligations under certain provisions of the agreement as Management Agent. Id.

Under the Development Agreement, the Partnership appointed defendant Globe-Op Development, LLC (the "Developer"), a Florida limited liability company, to "provide certain services for the Partnership with respect to overseeing the development of [Glorieta Gardens] until all development work is completed[.]"

-5-

Id. ¶ 166; ECF No. 61-3.  Pursuant to that agreement, the Developer was paid by the Partnership more than $7.48 million and warranted that the work performed in connection with the rehabilitation would "be of good quality . . . be free from defects, and . . . conform with the requirements" of the development plans.  AC ¶¶ 167-68; ECF No. 61-3.

Finally, under the Guaranty Agreement, defendants Creative Choice Homes, Inc., Naimisha Construction, Inc., Globe-Op Development, LLC, and Dilip Barot agreed to jointly and severally guarantee to plaintiff the "due, punctual, and full payment and performance of" the General Partners' obligations under the Partnership Agreement and the Developer's obligations under the Development Agreement. AC ¶ 5; ECF No. 61-2 § 1.01.  That agreement was intended to guarantee the full and complete payment and performance by the General Partners and the Developer, to pay damages to plaintiff in the event of a breach, and to indemnify plaintiff.  AC ¶ 5.  Like the Partnership Agreement, the Guaranty Agreement contains a forum selection clause stating that "[e]ach Guarantor irrevocably submits to the jurisdiction of any" New York state or federal court.  Id. ¶ 33; ECF No. 61-2 § 4.08.  The parties to the Guaranty Agreement are Glorieta LLC, New Vision Glorieta, LLC, Globe-Op Development, LLC, Creative Choice Homes,

Inc., Naimisha Construction, Inc., and Dilip Barot.  ECF No. 61-2.

### b. Dilip Barot and Naimisha Barot

Dilip Barot and Naimisha Barot, husband and wife, are individuals domiciled in Florida.  Id. ¶¶ 29, 30.  In broad terms, the Barots own or control a network of interconnected corporate entities that were involved in the acquisition and management of Glorieta Gardens.  Id. ¶¶ 23, 26, 35, 36, 44, 45, 46, 57, 84, 87, 90.  Mr. Barot owns and controls defendant Creative Choice Homes, Inc., a Florida corporation and a Guarantor under the Guaranty Agreement.  Id. ¶¶ 26, 46.  Mr. Barot signed the Partnership Agreement on behalf of Globe-Op Development, LLC,[2] and he signed the Guaranty Agreement in his individual capacity as a Guarantor. Id. ¶ 35.  Mr. Barot also owned Creative Choice Homes II, Ltd., the entity that sold Glorieta Gardens to the Partnership in 2015 for $20,300,000.  Id. ¶ 46.

Ms. Barot signed the Partnership Agreement and Guaranty Agreement on behalf of both Glorieta LLC and Globe-Op Development, LLC, entities she owns more than 99% of through direct or indirect

---

[2]    The parties dispute whether Mr. Barot signed the Partnership Agreement on behalf of Globe-Op Development, LLC.  However, that factual dispute is immaterial to the resolution of the motion presently before the Court.

means.   Id. ¶¶ 36, 44.   Specifically, Ms. Barot signed the Partnership Agreement and Guaranty Agreement on behalf of Glorieta LLC as "Manager and Member" of NB Holdings Management, LLC.   ECF No. 61-1.   NB Holdings Management, LLC is one of two members of Glorieta LLC, the other being NB Florida Holdings LLLP.   Aronovitz Decl., Ex. A.; Opp. at 3 n.3.   Ms. Barot is the 99% managing member of NB Florida Holdings LLLP and holds the remaining 1% indirectly as the 90% majority owner of NB Holdings Management, LLC. Aronovitz Decl., Ex. A.; Opp. at 3 n.3.   Similarly, Ms. Barot signed the Partnership Agreement and Guaranty Agreement on behalf of Globe-Op Development, LLC as "President" of Globe-Op, LLLP and Globe-Op, Inc.   ECF No. 61-2.   Globe-Op, LLLP is one of two members of Globe-Op Development, LLC, the other being NB Florida Holdings LLLP.   Id. ¶¶ 30, 87; Aronovitz Decl., Ex. B; Opp. at 3 n.4.   NB Florida Holdings LLLP, of which Ms. Barot is the 99% managing member, is also the 99% owner of Globe-Op, LLLP.   Aronovitz Decl., Ex. B; see also Opp. at 3 n.4.   Ms. Barot also serves as Creative Choice's "office manager."   Opp. at 2-3.

### c. Plaintiff's Allegations Concerning the Mismanagement of Glorieta Gardens and the Individual Defendants' Involvement

Plaintiff alleges that, rather than perform their contractual and fiduciary obligations, the Former General Partners

misappropriated plaintiff's capital contributions and failed to complete the rehabilitation and repair work necessary to keep Glorieta Gardens habitable.  See, e.g., AC ¶¶ 6, 8, 35.  According to the Amended Complaint, defendants' neglect resulted in squalid living conditions, including raw sewage, leaking ceilings, pervasive mold, unstable railings and balconies, and rodent and pest infestations.  Id. ¶ 6.

These conditions had catastrophic consequences for both the residents of Glorieta Gardens and the Partnership.  Building 8 at Glorieta Gardens, which contained 58 units, was condemned by the City of Opa-locka in August 2023 due to rampant mold and concerns over the building's structural integrity.  Id. ¶¶ 63-67.  Shortly thereafter, Miami-Dade County commenced an action in December 2023 against the Partnership due to unmitigated mold and sewage issues identified by the Department of Environmental Resources Management.  Id. ¶¶ 72-76.  Unbeknownst to plaintiff, the Former General Partners settled that lawsuit and agreed to pay $236,455 in fines, penalties, and expense reimbursements.  Id. ¶¶ 74-76. Following a site visit in January 2024, the Secretary of Housing and Urban Development ("HUD") stated that she was "appalled" by conditions at the property.  Id. ¶ 6.  In March 2024, the Partnership received a Notice of Default from HUD, warning that

the Partnership had three days to cure certain "Exigent Health and Safety" items or risk reduction, abatement, suspension, or termination of the Housing and Assistance Program ("HAP") contract.  Id. ¶ 77.  Plaintiff was not informed of the Notice of Default, and the Exigent Health and Safety items went uncured.  Id. ¶¶ 79, 80.  On April 4, 2024, HUD abated the Partnership's HAP contract, eliminating 90% of the property's rental revenue.  Id. ¶¶ 78, 81, 82.  In September 2024, HUD filed suit against the Partnership seeking nearly $7 million in penalties resulting from 142 alleged contract violations of the HAP contract.  Id. ¶ 83. HUD alleged that the Partnership was "owned and controlled by the Barots, through several shell companies and through their employees," and that Mr. Barot and his companies "systematically failed to provide minimally adequate maintenance" to Glorieta Gardens.  Id. ¶¶ 84, 85.

Plaintiff alleges that the Individual Defendants aided and abetted this misconduct through a pattern of self-dealing, inducing plaintiff to contribute millions of dollars to the Partnership before diverting that capital away from Glorieta Gardens to companies they owned or controlled.  Id. ¶¶ 146-56. For example, even after Building 8 was condemned, plaintiff approved payments to a general contractor retained to complete a

-10-

$2.5 million capital improvement plan.  Id. ¶ 66.  Plaintiff alleges that the contractor was affiliated with Mr. Barot's network of corporate entities and failed to pay its subcontractors despite receiving funds advanced by plaintiff.  Id.

Plaintiff also alleges that the Partnership entered into construction contracts totaling at least $15 million with Naimisha Construction, Inc. and $3.3 million with Optimal Construction, both owned or controlled by the Individual Defendants.  Id. ¶¶ 57, 91.  Plaintiff alleges that it contributed $400,000 to the Partnership for sewer remediation and that Mr. Barot was required to make a matching contribution.  Id. ¶¶ 94, 151; Opp. at 6-7.  However, Mr. Barot then directed $400,000 to his own company, Optimal Construction, which failed to pay the subcontractor responsible for performing the repair work.  Id. ¶¶ 94-96, 151.  Plaintiff also alleges that by signing a Fourth Installment Payment Date Certificate, Ms. Barot misrepresented Glorieta Gardens' legal and regulatory compliance and induced plaintiff to contribute $400,000 in additional funding to the property, beyond its existing obligations under the Partnership Agreement.  Id. ¶ 153.

Due to their alleged dereliction, Glorieta LLC and New Vision Glorieta, LLC were removed for cause from the Partnership in April 2024.  Id. ¶ 15.  Plaintiff now seeks damages including: (i) the

return of all capital contributions it invested in the Partnership, plus any costs incurred to raise those funds; (ii) all amounts it paid to cover operating expenses, remediate prior failures by the Former General Partners, address resulting violations and lawsuits, and relocate residents; and (iii) all losses, reductions, recaptures, or delays relating to Housing Tax Credits and the Partnership's tax losses.  Id. ¶¶ 113, 125, 145, 156, 163, 171.  Plaintiff also seeks lost profits, attorneys' fees, and disgorgement of all profits and other benefits alleged to have been wrongfully obtained by defendants.

## II.  Procedural Background[3]

Plaintiff filed its original complaint on January 31, 2025. ECF No. 1.  On May 2, 2025, the Individual Defendants requested a pre-motion conference for a proposed motion to dismiss plaintiff's complaint.  ECF No. 47.  Plaintiff filed an opposition to that request on May 7, 2025.  ECF No. 50.  On July 2, 2025, the Court held a teleconference with the parties and, given the jurisdictional arguments raised, suggested that the parties confer about a transfer of the case to Florida.  The parties notified the

---

[3]    The Court's recitation of relevant procedural history relates only to the Individual Defendants' motion to partially dismiss.  It does not reflect the procedural history relating to the Corporate Defendants, including certain of the Corporate Defendants' counterclaims asserted against plaintiff and third-party defendants.

Court on July 11, 2025, that they did not agree to move the case to Florida.  ECF No. 57.  On July 16, 2025, the Court permitted the Individual Defendants to bring their motion to dismiss without the necessity of a further conference and granted plaintiff leave to file an amended complaint.  ECF No. 58.  On July 28, 2025, the parties submitted a proposal outlining the briefing schedule for the Individual Defendants' motion and providing for certain jurisdictional discovery relating to Ms. Barot to be completed by August 29, 2025.  ECF No. 59.  The Court endorsed that schedule on July 30, 2025.  ECF No. 60.

Plaintiff filed its Amended Complaint on August 1, 2025.  ECF No. 61.  On August 15, 2025, the Individual Defendants filed a motion to partially dismiss plaintiff's Amended Complaint and an accompanying memorandum of law.  ECF Nos. 71, 72 ("Mot.").  On August 27, 2025, plaintiff requested a pre-motion conference for a proposed motion to compel Ms. Barot's responses to jurisdictional discovery.  ECF No. 77.  The Individual Defendants opposed that request on August 29, 2025, and requested that the Court curtail the scope of jurisdictional discovery.  ECF No. 78.  On September 3, 2025, the parties requested, and the Court granted, a stay of the deadlines relating to the Individual Defendants' motion pending the Court's resolution of the jurisdictional discovery

dispute.  ECF Nos. 79, 80.  On September 19, 2025, the Court issued a letter outlining the appropriate scope of jurisdictional discovery and directed the parties to submit an updated briefing and discovery schedule.  ECF No. 86.

The parties filed an updated schedule on October 15, 2025, which the Court endorsed the next day.  ECF Nos. 90, 91.  On November 4, 2025, the Individual Defendants filed a letter motion to seal plaintiff's forthcoming opposition to the Individual Defendants' motion.  ECF No. 99.  Plaintiff opposed the sealing request but agreed to file redacted versions of its filings on the public docket that omitted all references to the relevant corporate ownership percentages.  ECF Nos. 99, 100.  Plaintiff filed its redacted opposition and declaration in support thereof on November 4, 2025.  ECF Nos. 102, 103.  The next day, the Court endorsed the proposal to maintain redacted versions of plaintiff's filings on the public docket and seal unredacted versions.  ECF No. 105.  The Individual Defendants filed a reply memorandum in support of their motion on November 11, 2025.  ECF No. 110 ("Reply").

**III. Legal Standard**

**a. Rule 12(b)(2)**

When opposing a motion to dismiss pursuant to Rule 12(b)(2), it is the plaintiff's burden to demonstrate that the Court has

jurisdiction over the defendant.  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).  To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must "make a prima facie showing that jurisdiction exists."  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010).  Such a showing requires legally sufficient allegations of jurisdiction, including an "averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  Id. (citation and internal quotation marks omitted).  On a motion to dismiss pursuant to Rule 12(b)(2), the Court may consider all pleadings, affidavits, and supporting materials, while "resolving all doubts in [plaintiff's] favor."  DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).  Where, as here, the issue of personal jurisdiction arises in a diversity action, a district court's inquiry is two-fold: first, it must determine whether the plaintiff has shown that the defendant is "amendable to service of process" under the forum state's laws; and second, it must "assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  Met. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

### b. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). Additionally, a court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if not incorporated by reference, and matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

**DISCUSSION**

Ms. Barot moves to dismiss the Amended Complaint pursuant to Rule 12(b)(2).  Mr. and Ms. Barot also move to dismiss Count IV of the Amended Complaint (aiding and abetting breach of fiduciary duty) pursuant to Rule 12(b)(6).  The Court addresses Ms. Barot's jurisdictional challenge first.  See N. Fork Partners Inv. Holdings, LLC v. Bracken, 2020 WL 2521448, at *2 (S.D.N.Y. May 18, 2020) ("A court facing challenges to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question and must dismiss the action against any defendant over whom it lacks personal jurisdiction.") (citation and internal quotation marks omitted).

## I.    Rule 12(b)(2)

In contractual agreements, "[p]arties can consent to personal jurisdiction through forum-selection clauses[.]"  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  Where an agreement contains a valid and enforceable forum selection clause, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."  Export-Import Bank of U.S. v. Hi-Films S.A. de C.V., 2010 WL 3743826, at *4 (S.D.N.Y. Sep. 24, 2010).

-17-

Here, plaintiff does not assert arguments establishing specific or general jurisdiction over Ms. Barot.  Opp. at 14 n.6. Instead, plaintiff relies on the forum selection clauses contained in the Partnership Agreement and Guaranty Agreement.  Opp. at 9-14.  Plaintiff specifically argues that, under the "closely related" standard, those clauses permit the Court to exercise personal jurisdiction over Ms. Barot based on her more than 99% ownership of Glorieta LLC and Globe-Op Development, LLC and her execution of the agreements on behalf of those entities.  Id. Accordingly, the Court begins its personal jurisdiction analysis with an overview of the closely related test.

**a. The Closely Related Test**

Under the closely related doctrine, the Second Circuit has "permitted non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound."  Fasano v. Li, F.4th 91, 103 (2d Cir. 2022) (citing Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009)).  The doctrine was designed to give "parties who have come to an agreement the ability to enforce that agreement against the universe of entities who would expect as much –

successors-in-interest, executive officers, and the like – without being overly persnickety about who signed on the dotted line." Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc., 328 F. Supp. 3d 329, 337 (S.D.N.Y. 2018); see also Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, (2d Cir. 2009) ("[A] forum selection clause is integral to the obligations of the overall contract, and a successor in interest should be no more able to evade it than any other obligation under the agreement."). Whether a party is "closely related" to a signatory is a "fact-specific inquiry." Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 561 (S.D.N.Y. 2013).

Plaintiff maintains that this Court may exercise personal jurisdiction over Ms. Barot because she signed the Partnership Agreement and Guaranty Agreement on behalf of defendants Glorieta LLC and Globe-Op Development, LLC, entities she owns and manages. Opp. at 9-14. Plaintiff further emphasizes Ms. Barot's role in the alleged misconduct forming the basis of the Amended Complaint: namely, she (i) "oversaw" the Corporate Defendants' expenses, "including the hiring of construction entities under her and her husband's ownership or control that performed shoddy work"; (ii) mismanaged the Corporate Defendants' insurance, resulting in "numerous lawsuits"; and (iii) signed checks on behalf of the

-19-

Corporate Defendants and "failed to timely pay vendors, contractors, and sub-contractors." Opp. at 11-12.

Ms. Barot, in contrast, argues that plaintiff cannot stretch the closely related test to supply personal jurisdiction over her because she did not sign the agreements in her individual capacity. Mot. at 6-10. In doing so, Ms. Barot relies on a line of recent cases in this District declining to exercise personal jurisdiction over non-signatory defendants. Mot. at 7-9. Ms. Barot specifically points to HSM Holdings, LLC v. Mantu I.M. Mobile Ltd., 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) and Arcadia Biosciences, Inc. v. Vilmorin & Cie, 356 F. Supp. 3d 379 (S.D.N.Y. 2019), where Judge Liman and Judge Rakoff respectively declined to apply the closely related doctrine as a basis for personal jurisdiction and analyzed jurisdiction under traditional long-arm and due process principles. Id. Ms. Barot also contends that plaintiff has not pleaded facts showing that enforcement of the forum selection clauses was foreseeable. Reply at 6-7.

The Second Circuit has not resolved the question of when a signatory may enforce a forum selection clause against a non-signatory. Accordingly, whether a court may exercise personal jurisdiction based on a forum selection clause over an individual who did not sign the clause in her individual capacity has been

the subject of substantial discussion. Courts in this Circuit have articulated and applied the closely related doctrine where the non-signatory had a particularly close relationship with a signatory, through ownership, control, or an active role in the negotiation, performance, or alleged breach of the agreement, such that enforcement of the clause was foreseeable. See, e.g., Firefly Equities LLC v. Ultimate Combustion Co., Inc., 736 F. Supp. 2d 797 (S.D.N.Y. 2010) (exercising jurisdiction over a president and 17% shareholder who executed an agreement on behalf of the entity); Nanopierce Techs., Inc. v. Southridge Capital Mgmt., LLC, 2003 WL 22882137, at *5-6 (S.D.N.Y. Dec. 4, 2003) (exercising jurisdiction over a CFO who signed on behalf of her company on grounds that she was "closely related" to the transaction by virtue of her position); GlaxoSmithKline LLC v. Laclede, Inc., 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019) (exercising jurisdiction over a president and vice president, both sole shareholders of the signatory company, who signed in their official capacities); Long Side Ventures LLC v. Hempacco Co., 2023 WL 6386888, at *6 (S.D.N.Y. Sep. 29, 2023) (exercising jurisdiction over a president and 25% shareholder and a controlling officer based on their "close relationship to the transactions"); LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 161 (E.D.N.Y. 2012)

-21-

(exercising jurisdiction over a non-signatory that was "intimately connected" to a signatory and the dispute); Seagrape Invs. LLC v. Tuzman, 2024 WL 4337448, at *7 (S.D.N.Y. Sept. 26, 2024) (same).

Having carefully considered the record and the parties' submissions, Ms. Barot's efforts to avoid the closely related test are unavailing. The Amended Complaint, together with facts elicited during jurisdictional discovery, establishes a substantial relationship among Ms. Barot, the agreements, the alleged breach of those agreements, and the signatory entities, rendering enforcement of the forum selection clauses foreseeable. Through direct or indirect means, Ms. Barot owns more than 99% of Glorieta LLC and Globe-Op Development, LLC, and she executed the Partnership Agreement and Guaranty Agreement on their behalf. Aronovitz Decl., Ex. B; Opp. at 3 n.4; Opp. at 11-12; see also supra pp. 7-8. Her nearly complete ownership and control present an even stronger basis to apply the closely related doctrine than in Firefly Equities and Long Side Ventures, where defendants held only minority stakes of 17% and 25% in the signatory companies, respectively. Moreover, Ms. Barot reviewed the agreements, including the forum selection clauses, before signing them on behalf of Glorieta LLC and Globe-Op Development, LLC. Aronovitz Decl., Ex C. at 46:24-47:2, 51:23-25; 52:25-53:4. Consequently,

-22-

it was, or at least should have been, foreseeable that disputes arising from those agreements, and implicating her own conduct, would be litigated in the selected forum.

Further, Ms. Barot is not a passive owner but an active participant in the events underlying this action.  She oversaw capital expenditures of Glorieta Gardens, Glorieta LLC, and Globe-Op Development, LLC; was "regularly involved in the decision making" concerning sitework at the property; participated in contract negotiations; approved or signed "the majority of checks pertaining to Glorieta Gardens"; and "personally knew about the many maintenance issues" plaguing Glorieta Gardens.  Opp. at 4-6; see also Aronovitz Decl., Ex. D ¶¶ 4-6.  A former employee of the property manager described Ms. Barot as the "gatekeeper" for payments related to Glorieta Gardens.  Aronovitz Decl., Ex. D ¶ 6. That operational and financial involvement ties Ms. Barot to the alleged mismanagement forming the basis of plaintiff's claims. Ms. Barot is therefore "intimately connected" to both the signatories and the underlying dispute.  LaRoss Partners, 874 F. Supp. at 161.

To be sure, not every case involving a non-signatory warrants application of the closely related test.  In HSM Holdings and Arcadia Bioscience, the courts carefully declined to exercise

personal jurisdiction over non-signatories whose connections to the signatory or dispute were more limited.[4]  However, Judge Liman emphasized the need to "examine the relevant allegations and evidence with respect to the individual the plaintiff seeks to hale into court."  HSM Holdings, 2021 WL 918556, at *14.  Here, Ms. Barot is the nearly complete owner of the signatory entities, reviewed and executed the agreements containing the forum selection clauses, and was actively involved in the management and alleged mismanagement of Glorieta Gardens.  The unique closeness of her relationship to the signatories and the underlying conduct makes enforcement of the forum selection clauses foreseeable in a manner absent in HSM Holdings and Arcadia Biosciences.  Similarly, additional authorities cited by Ms. Barot, in which courts declined to exercise personal jurisdiction over non-signatories, are factually distinguishable because the non-signatories in those

---

[4]    The Court does not, in any way, fail to acknowledge that some courts within this District have reached differing conclusions on this question, and the Court fully recognizes the cases declining to apply the closely related doctrine in the personal jurisdiction context, instead limiting its use to forum non conveniens analyses.  The Court has carefully considered that reasoning and does not discount its force.  Under these particular facts, namely the exceptionally close relationship between Ms. Barot and the signatory entities, the Court respectfully declines to adopt that approach on these facts.

-24-

cases lacked the level of ownership, control, and active participation that Ms. Barot exercised here.[5]

Under the closely related doctrine, the facts presented render the application of the forum selection clause foreseeable and the exercise of personal jurisdiction over Ms. Barot proper. Accordingly, Ms. Barot's motion is denied without need for further inquiry. See Atl. Mut. Ins. Co. v. M/V HUMACAO, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001) ("[W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional due process requirements have been met.").

## II.  Rule 12(b)(6)

The Court next addresses the Individual Defendants' motion to dismiss plaintiff's claim for aiding and abetting breach of

---

[5]    See, e.g., Villalobos v. Telemundo Network Grp., LLC, 2024 WL 5008980 (S.D.N.Y. Dec. 6, 2024) (declining to exercise jurisdiction where defendant assisted in producing a television show whose owner executed the contract at issue); Italian Exchange Grp. USA, Inc. v. Bartolozzi, 2023 WL 7301810 (S.D.N.Y. Nov. 6, 2023) (declining to exercise jurisdiction over a general manager of a signatory who did not sign the contract); Beskrone v. Berlin, 656 F. Supp. 3d 496 (S.D.N.Y. 2023) (declining to exercise jurisdiction over former executives who, in some cases, acted as signatories); Seating v. Bizlog, LLC, 2025 WL 3101250 (S.D.N.Y. Nov. 6, 2025) (declining to exercise jurisdiction over entities that did not sign the agreement where no facts established that they were "closely related" to the agreement or the signatories); Koh v. Koo, 2023 WL 5352786 (S.D.N.Y. Aug. 21, 2024) (declining to exercise jurisdiction over entities that did not sign the agreement, including one that did not exist at the time of contract execution).

fiduciary duty (Count IV) pursuant to Rule 12(b)(6).    The Individual Defendants do not challenge the adequacy of the allegations as to the underlying breach(es) by the Former General Partners.  Instead, they contest only the third and fourth elements of the claim, arguing that the Amended Complaint fails to allege (i) that either Individual Defendant had actual knowledge of the Former General Partners' breach(es), and (ii) that either Individual Defendant substantially assisted the breach(es).  Mot. at 15-18.

### a. Choice of Law

As a threshold matter, plaintiff contends that under New York's choice-of-law rules, Florida law governs its aiding and abetting claim because the Partnership, Guaranty, and Development Agreements each contain Florida choice-of-law provisions. Opp. at 14-15 n. 7; see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000) (explaining that a federal court sitting in diversity applies the forum state's choice-of-law rules and enforces contractual choice-of-law provisions absent fraud or violation of public policy). The Individual Defendants do not dispute this conclusion.  They concede that Florida law "should probably" apply and rely on Florida authority in both their opening and reply briefs.  Reply

-26-

at 8 n.6.  Accordingly, in light of the parties' apparent agreement and New York's general deference to contractual choice-of-law provisions, the Court applies Florida law to plaintiff's aiding and abetting claim.

### b. Aiding and Abetting Breach of Fiduciary Duty

First, the Individual Defendants argue that Count IV must be dismissed because the Amended Complaint fails to allege that either Mr. or Ms. Barot had actual knowledge of the Former General Partners' underlying breach(es) of fiduciary duty.  Mot. at 15-16.  Specifically, the Individual Defendants contend that plaintiff improperly seeks to impute knowledge based solely on their ownership and control of Glorieta LLC, Naimisha Construction, Inc., Globe-Op Development, LLC, and Optimal Construction, which, they argue, does not satisfy the "actual knowledge" element for an aiding and abetting claim.  Id. Plaintiff counters and cites specific paragraphs in the Amended Complaint alleging that the Individual Defendants actually knew of and authorized transactions and decisions detrimental to the Partnership and plaintiff.  Opp. at 15-18.

Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (i) a fiduciary duty on the part of the primary wrongdoer; (ii) a breach of that duty; (iii)

knowledge of the breach by the aider and abettor; and (iv) substantial assistance or encouragement of the wrongdoing by the aider and abettor. Aquent LLC v. Stapleton, 65 F. Supp. 3d 1339, 1350 (M.D. Fla. 2014). A plaintiff must allege facts that establish, "or allow the fair inference," that the defendant had "actual knowledge" of the underlying misconduct. Isaiah v. JPMorgan Chase Bank, N.A., 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017), aff'd sub nom. Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296 (11th Cir. 2020) (citation omitted). Actual knowledge may be shown by circumstantial evidence and indeed is "nearly universally found based on circumstantial evidence." Cabot E. Broward 2 LLC v. Cabot, 2016 WL 8740484, at *4 (S.D. Fla. Dec. 2, 2016) (citing Amegy Bank Nat. Ass'n v. Deutsche Bank Alex. Brown, 619 F. App'x 923 (11th Cir. 2015)). However, the circumstantial evidence must "demonstrate that the aider-and-abettor actually knew of the underlying wrongs committed." Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (citation omitted).

Measured against this standard, the Individual Defendants' argument concerning plaintiff's purported pleading failure is unavailing. The Amended Complaint is rife with factual allegations which, taken as true, plausibly support an inference of actual knowledge. Plaintiff alleges, inter alia, that: (i) Mr. Barot,

-28-

together with Ms. Barot or individually, owns and/or controls Glorieta LLC, Naimisha Construction, Inc., Globe-Op Development, LLC, and Optimal Construction; (ii) Mr. Barot directed millions of dollars in Partnership funds to entities under his control; (iii) Mr. Barot selected contractors that he knew would perform inadequate repair work; (iv) Mr. Barot knew of and authorized major decisions regarding the property; (v) Mr. Barot failed to authorize funds necessary to maintain habitable conditions at Glorieta Gardens; (vi) Mr. Barot knew that conditions at the property did not meet HUD standards; and (vii) Mr. Barot "siphon[ed] funds" from the Partnership and plaintiff for the benefit of himself and affiliated entities.  AC ¶¶ 8, 29, 89, 149, 150, 151.  Further, the Amended Complaint alleges that Mr. Barot "induce[d]" plaintiff to contribute approximately $400,000 by agreeing to match that contribution, but instead diverted his share to Optimal Construction, an entity he controlled.  Id. ¶¶ 94, 151.

The Amended Complaint contains comparable allegations regarding Ms. Barot's actual knowledge.  It alleges that she, alone or together with Mr. Barot, owns and/or controls Glorieta LLC, Naimisha Construction, Inc., Globe-Op Development, LLC, and Optimal Construction.  Id. ¶ 152.  The Amended Complaint further alleges that Ms. Barot executed the Third Installment Payment Date

Certificate on behalf of Glorieta LLC and Globe-Op Development, LLC, thereby inducing plaintiff to release or fund more than $4 million to the Partnership.  Id. ¶ 153.  According to the Amended Complaint, that certificate represented that certain rehabilitation work had been completed in accordance with applicable development plans and specifications, when in fact it had not.  Id. ¶¶ 59, 153.

Similarly, the Amended Complaint alleges that Ms. Barot executed the Fourth Installment Payment Date Certificate, which falsely covenanted that Glorieta LLC would take necessary steps to ensure Glorieta Gardens remained in regulatory compliance, and "induced" plaintiff to contribute an additional $400,000.  Id. ¶ 153.  Taken as true, these allegations, like those concerning Ms. Barot, support actual knowledge, awareness, and authorization of the very transactions and decisions alleged to constitute the Former General Partners' fiduciary breaches.

Next, the Individual Defendants argue that plaintiff fails to plead that either Mr. or Ms. Barot substantially assisted the Former General Partners' breach(es) of fiduciary duty.  Mot. at 16-18.  Specifically, they contend that the Amended Complaint's allegations are conclusory and do not plausibly link the Individual Defendants to underlying alleged misconduct.  Id.  The Individual

Defendants further assert that, at most, the allegations describe mere inaction, which cannot constitute aider and abettor liability absent an independent fiduciary duty.  Id. at 17-18.  Plaintiff responds that the Amended Complaint alleges affirmative conduct, namely that the Individual Defendants induced plaintiff to contribute capital to the Partnership and diverted those funds to entities under their control.  Opp. at 18-20.

Under Florida law, substantial assistance occurs when a defendant "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." BCJJ, LLC v. LeFevre, 2012 WL 3071404, at *34 (M.D. Fla. July 27, 2012).  Courts consider several factors when determining whether the aid was substantial, including the nature of the act encouraged, the amount of assistance, the defendant's presence at the time of the tort, the defendant's relationship to the primary wrongdoer, the defendant's state of mind, and the duration of assistance.  Garcia v. Character Techs., Inc., 785 F. Supp. 3d 1157, 1175 (M.D. Fla. 2025).

Here, many of the same allegations concerning actual knowledge also support a reasonable inference of substantial assistance.  Notably, plaintiff alleges that the Individual Defendants affirmatively induced plaintiff to make capital

contributions to the Partnership with the intention of siphoning those funds to entities they controlled. See, e.g., AC ¶¶ 103, 105, 149-53. Contrary to the Individual Defendants' characterization, these allegations are not conclusory. The Amended Complaint alleges, for example, that Mr. Barot induced certain of plaintiff's capital contributions by representing that he would contribute funds to the Partnership, but instead directed those funds to Optimal Construction. Id. ¶¶ 94, 151. Plaintiff also alleges that Mr. Barot selected contractors that he knew would not perform necessary repairs. Id. ¶ 150. The Amended Complaint further alleges that Ms. Barot, despite knowing that Glorieta Gardens was not safe and sanitary, executed the Third and Fourth Installment Payment Date Certificates and thereby induced additional capital contributions. Id. ¶¶ 59, 153. Plaintiff also emphasizes a sustained course of conduct and a close relationship between the Individual Defendants, the Former General Partners, and affiliated entities. Accordingly, taken together, plaintiff's allegations plausibly plead that the Individual Defendants are liable for aiding and abetting the Former General Partners' breach(es) of duty.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motion

-32-

to partially dismiss the Amended Complaint is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 71.  The Clerk of Court is also respectfully directed to unseal the filings at ECF Nos. 106 and 107.

        **SO ORDERED.**


Dated:    March 2, 2026
          New York, New York

_____
     NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE