GulkoSchwed LLP
ATTORNEYS AT LAW

525 Chestnut Street, Suite 209
Cedarhurst, New York 11516
212.500.1312 212.678.0405

October 1, 2026

**Via ECF**

Honorable Naomi Reice Buchwald
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *R4 GL Acquisition LLC v. Glorieta LLC, et al.*, Case No. 1:25-cv-00944 (NRB)**

Dear Judge Buchwald:

We write on behalf of Defendants Glorieta LLC, New Vision Glorieta, LLC, Creative Choice Homes, Inc., Naimisha Construction, Inc., and Globe-Op Development, LLC (collectively, the "Corporate Defendants"), and Dilip Barot and Naimisha Barot (together, the "Individual Defendants") (collectively, "Defendants"), in response to Plaintiff's September 28, 2026, letter motion for a discovery conference (ECF No. 154). In their August 28, 2026, joint status report (ECF No. 152), the parties requested that the Court direct a further status report in 30 days, and that report was scheduled for October 1, 2026 (ECF No. 153). Because Plaintiff filed its letter motion before that date, Defendants address Plaintiff's points and update the Court in this single filing to conserve judicial and party resources. Defendants respectfully submit that a conference is unnecessary at this time or, at most, premature.

**A. Plaintiff's Overbroad Search Terms**

Plaintiff's Letter primarily complains about the pace of Defendants' production of documents, attributing it to Defendants' "dilatory conduct." The numbers say otherwise. Defendants have reviewed thousands of documents returned by Plaintiff's search terms. To date, 1,913[1] of them have been responsive and non-privileged, representing a responsiveness rate of 24%.

For months, Defendants warned Plaintiff that Plaintiff's search terms would bury the relevant documents under hundreds of thousands of irrelevant ones. Plaintiff insisted on its terms anyway. In January 2026, Defendants advised that Plaintiff's terms were "facially overbroad." ECF No. 124 at 1. In May, they explained again that terms such as the bare words "rent," "Invoic*," "bill," "statement," and "payment," and the email addresses of the central participants, would capture myriad documents which were irrelevant to the specific claims at issue here. ECF No. 141 at 2. Defendants proposed a tiered approach built on issue-specific terms; Plaintiff rejected it. *Id.* at 1. Defendants proposed limiting terms for the highest-volume hits; Plaintiff never responded. *Id.*

[1] This figure does not include the non-email records that Corporate Defendants produced earlier this year.

Having demanded terms that, by design, sweep in overwhelmingly irrelevant material, Plaintiff cannot now complain that those terms do not yield responsive documents at a rapid clip.[2]

**B. Defendants Have Implemented AI-Assisted Review to Accelerate Production**

To address the burden Plaintiff's terms created, approximately two months ago, Defendants engaged their e-discovery vendor, TCDI, to explore options for AI-assisted review. Defendants are conducting that review on Relativity aiR, an industry-standard platform. Working with TCDI, they developed protocols that use AI to identify the documents within Plaintiff's search-term population that are most likely to be responsive, so that attorney review is directed to those documents first. Defendants informed the Court of this initiative in the parties' last status report, ECF No. 152, and invited Plaintiff to meet and confer about it. Plaintiff never responded. After an extensive, iterative process of refining the review protocols, the AI-assisted review went live approximately two weeks ago. So far, it has identified approximately 51,000 likely relevant documents, and Defendants are prioritizing their review of and production from those documents.

Plaintiff now demands that Defendants also run "targeted searches" such as "Glorieta and REAC" and "Glorieta and HUD." Letter at 2. That demand fails for two independent reasons.

*First*, it comes too late. For months, Defendants asked Plaintiff to propose targeted, issue-specific terms, and Plaintiff refused. The Court then directed Defendants to produce documents responsive to Plaintiff's search terms, and that is what Defendants are doing. Plaintiff cannot insist on maximal terms and then, once the resulting burden becomes manifest, demand a second, parallel set of searches layered on top of the first.

*Second*, the demand is inconsistent with the review protocols Defendants have developed. Running ad hoc keyword searches alongside that AI review protocol would require duplicative review and coding, and slow production rather than accelerate it. The choice of review methodology belongs to the producing party. *See Hyles v. New York City*, No. 10 Civ. 3119 (AT) (AJP), 2016 WL 4077114, at *2–3 (S.D.N.Y. Aug. 1, 2016) (responding parties "are best situated to evaluate the procedures, methodologies, and technologies appropriate for" producing their own ESI).

**C. Defendants Have Produced Financial Records**

Plaintiff asserts that the Corporate Defendants have yet to produce "full financial documents," including general ledgers and trial balances. Letter at 2. That is not so. The Corporate Defendants' very first production, served on **<u>February 16, 2026</u>**, included the vast majority of the

[2] Plaintiff touts its production of 9,000 documents, but this is only because Defendants reasonably agreed to more targeted search terms, that did not capture hundreds of thousands of irrelevant documents. Moreover, Plaintiff's comparison ignores each side's starting point. Defendants began with a universe of roughly 450,000 documents; Plaintiff, applying Defendants' proposed search terms, began with roughly 141,000. Given this disparity, Defendants are advancing at a comparable rate.

financial documents. The Corporate Defendants' most recent production, served today, included the balance of those documents.

Plaintiff also seeks invoices from third-party contractors, contending that they "do not require keyword searches." Letter at 2. They do. There is no central database of contractor invoices. Payments to third-party contractors are recorded in the general ledgers, which have already been produced. The individual invoices that contractors sent are contained in Defendants' electronic records—indeed, Plaintiff's own terms include "Invoic*," and they are being reviewed and produced as part of the electronic document review.

Plaintiff's Letter identifies no deficiency that a conference would cure. Defendants are producing on a rolling basis under a review protocol designed to find the responsive documents in Plaintiff's overbroad population as quickly as possible. Defendants therefore respectfully request that the Court deny Plaintiff's letter motion for a discovery conference, and instead direct the parties to submit a joint status report by November 6, 2026.

Respectfully submitted,

*/s/ Samuel Kadosh*
GULKO SCHWED LLP
*Attorneys for the Corporate Defendants*

*/s/ Alejandra S. Alvarez*
Nason Yeager Gerson Harris and Fumero, P.A.
*Attorneys for the Individual Defendants*